# 22-792

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

⬦⬦

JENNIFER BERKELEY CARR,

*Plaintiff-Appellant,*

—against—

NEW YORK CITY TRANSIT AUTHORITY, MARVA BROWN, DAVID CHAN,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX FOR PLAINTIFF-APPELLANT

GREGORY G. SMITH
JANET J. LENNON
LAW OFFICE OF GREGORY SMITH
77 Sands Street
Brooklyn, New York 11201
(917) 748-2623
gsmith225@aol.com

*Attorneys for Plaintiff-Appellant*

# **<u>TABLE OF CONTENTS</u>**

PAGE

TABLE OF AUTHORITIES ................................................... iii

STATEMENT OF THE CASE.................................................. 1

JURISDICTIONAL STATEMENT............................................ 1

    A.  BASIS FOR DISTRICT COURT'S JURISDICTION................ 1

    B.  BASIS FOR APPELLATE COURT JURISDICTION ............... 1

    C.  TIMELINESS OF APPEAL ........................................... 1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ............. 2

SUMMARY OF ARGUMENT................................................. 3

PROCEDURAL HISTORY ................................................... 4

STATEMENT OF FACTS .................................................... 5

ARGUMENT ............................................................... 20

    THE COURT IMPROPERLY GRANTED SUMMARY
    JUDGMENT ON THE DISCRIMINATION AND
    RETALIATION CLAIMS ............................................... 20

    I.  JUDGE BRODERICK ERRED IN FAILING TO APPLY HIS
       STATED LAW WITH REGARD TO THE  RETALIATORY
       HOSTILE WORK ENVIRONMENT CLAIMS BECAUSE HE
       DID NOT REVIEW THE FACTS UNDER THE OPINION'S
       CORRECTLY STATED STANDARD OF WHETHER THE
       OFFENDING ACTIONS WOULD DISSUADE A
       REASONABLE WORKER FROM MAKING OR
       SUPPORTING A CHARGE OF DISCRIMINATION ............... 21

        PLAINTIFF STATES A CLAIM FOR DISCRIMINATION........ 44

PAGE

PLAINTIFF ESTABLISHED A PRIMA FACIE CASE OF DISCRIMINATION BASED ON AGE, RACE AND GENDER IN THE DENIAL OF TWO PROMOTIONS .................... 45

THE EMPLOYERS' PROFFERED REASONS FOR THE DENIAL OF PROMOTIONS ARE MERE PRETEXT TO MASK DISCRIMINATION ....................................... 48

    A.  Appellant Was Denied Promotion to PMO Because of Age, Race and Gender Discrimination ........................ 48

    B.  Brown Discriminatorily Denied Appellant's Second Sought After Promotion to PMA ........................... 53

        1.  The 2015 New York City Leadership Institute Was Meant to Appease Appellant ............................. 54

        2.  The Chan Interview Panel Composition Was Different From The DiLorenzo Interview Panel Indicating Intent to Discriminate ........................ 55

        3.  Brown's Requirement of Technical Experience And Training Is A Subterfuge For Unlawful Discrimination ............................................. 58

CONCLUSION ................................................................ 61

# TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*Amtrak v. Morgan*,
136 U.S. 101, 122 S. Ct. 2016, 153 L. Ed. 2d 106 (2002) .......... 16, 41

*Anderson v. New York City Health & Hosp. Corp.*,
2020 U.S. Dist. LEXIS 36772 (S.D.N.Y. March 2, 2020) ............... 47

*Byrnie v. Town of Cromwell Bd. of Educ.*,
243 F.3d 93 (2d Cir. 2001) ..................................... 38, 51, 57

*Cruz v. Coach Stores, Inc.*,
202 F.3d 560 (2d Cir. 2000) ............................................. 29

*Davis-Garett v. Urban Outfitter, Inc*.
921 F.3d 30 (2d Cir. 2019) ................................27, 28, 31, 37

*Delaney v. Bank of America Corp*..,
766 F.3d 163 (2d Cir. 2014) ............................................. 44

*Feingold v. New York*,
366 F.3d 138 (2d. Cir. 2004) ............................................ 32

*Fields v. N.Y. State Office of Mental Retardation & Developmental Disabilities*,
115 F.3d 116 (2d Cir. 1997) ....................................... 40, 45

*Galabya v. NYC Bd. of Educ.*,
202 F.3d 636 (2d Cir. 2000) ............................................. 47

*Gordon v. N.Y. City Bd. of Educ.*,
232 F.3d 111 (2d Cir. 2000) ....................................... 29, 38

*Gorzynski v. JetBlue Airways Corp.*,
596 F.3d 93 (2d Cir. 2010) ........................................ 21, 45

*Grant v. Hazelett Strip-Casting Corp.*,
880 F.2d 1564 (2d Cir. 1989)............................................. 33

*Gross v. FBL Financial Services, Inc.*,
557 U.S. 167, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009) ............... 44

*Hayut v. State Univ. of N.Y.*,
352 F.3d 733 (2d Cir.2003)............................................... 41

PAGE(S)

*Hicks v. Baines,*
  593 F.3d 159 (2d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 30, 32

*Holcomb v. Iona Coll.,*
  521 F.3d 130 (2nd Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

*Jute v. Hamilton Sundstrand Corp.,*
  420 F.3d 166 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 22, 28

*Kaytor v. Electric Boat Corp.,*
  609 F.3d 537 (2d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Kessler v. Westchester Cnty Dep't of Soc. Servs.,*
  461 F.3d 199 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Kwan v. Andalex Grp., LLC,*
  737 F.3d 834 (2d Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 35, 41, 60

*Littlejohn v. City of New York,*
  795 F. 3d 297 (2d Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46, 47, 48

*Matima v. Celli,*
  228 F.3d 68 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*McDonnell Douglas Corp. v. Green,*
  411 U.S. 792 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 21, 22, 44

*Medeiros v. Pratt & Whitney Power Sys.,*
  272 Fed. Appx. 78 (2d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50, 58, 60

*Morris v. Lindau,*
  196 F.3d 102 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Patterson v. Oneida,*
  375 F.3d 206 (2d. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*Reed v. A.W. Lawrence & Co.,*
  95 F.3d 1170 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Reeves v. Sanderson Plumbing Prods., Inc.,*
  530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) . . . . . . . . . *passim*

*Rodriguez v. Board of Educ. of Eastchester Union Free Sch. Dist.,*
  620 F.2d 362 (2d Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

PAGE(S)

*Summa v. Hofstra Univ.*,
    708 F.3d 115 (2d Cir. 2013) ........................................... 36, 38

*Sumner v. United States Postal Serv.*,
    899 F.2d 203 (2d Cir. 1990) ............................................... 40

*Vega v. Hempstead Union Free Sch. Dist.*,
    801 F.3d 72 (2d Cir. 2015) ........................................... 31, 32

## Statutes

29 U.S.C.S. § 621 et seq., Age Discrimination
    in Employment Act ("ADEA") ................................ 4, 27, 30, 44

28 U.S.C. § 1291 ........................................................... 1

42 U.S.C. § 1981 ...................................................... 3, 4, 44

42 U.S.C. § 1983 ........................................................ 3, 4

Title VII ............................................................... *passim*

## Rules

Fed. R. App. P. 3 ........................................................ 1

Fed. R. App. P. 4 ........................................................ 1

Fed. R. Civ. P. 56 ....................................................... 4

Fed. R. Civ. P. 56.1 ................................................. *passim*

Second Circuit Local Civil Rule 56.1(a) .................................... 5

## STATEMENT OF THE CASE

This appeal arises from Judge Broderick's March 21, 2022 Opinion and Order granting summary judgment to Defendants against Plaintiff.

## JURISDICTIONAL STATEMENT

### A. BASIS FOR DISTRICT COURT'S JURISDICTION

The United States District Court for the Southern District of New York had subject matter jurisdiction over this case based upon federal statute issues.

### B. BASIS FOR APPELLATE COURT JURISDICTION

The United States Court of Appeals for the Second Circuit has jurisdiction over this appeal because the present appeal is from a final Order and Judgment of the United States District Court for the Southern District of New York. Therefore, this is an appeal as of right pursuant to 28 U.S.C. Section 1291 and Federal Rules of Appellate Procedure 3 and 4.

### C. TIMELINESS OF APPEAL

The Notice of Appeal was filed timely by Plaintiff-Appellant on April 13, 2022 within thirty (30) days of the Order at issue that was entered on March 21, 2022.

## <u>STATEMENT OF THE ISSUES PRESENTED FOR REVIEW</u>

I.  Whether the District Court Judge erred in ruling that Plaintiff did not state a claim as a matter of law for discrimination and granting summary judgment for the claims.

II.  Whether the District Court Judge erred by not denying Defendants' motion for summary judgment because he did not draw reasonable inferences from Plaintiff's (nonmoving party's) Rule 56.1 statement in favor of Plaintiff and improperly granted summary judgment in his failure to do so.

III.  Whether the District Court Judge erred in ruling in favor of the movant Defendants when Plaintiff presented factually disputed evidence in her Rule 56(1) statement.

IV.  Whether the District Court Judge erred in ruling in favor of the movant Defendants when there was a factual issue as to Defendant employer's intent and motivation.

V.  Whether the District Court erred in its application of the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) burden shifting standard in this Title VII and discrimination claim.

VI.  Whether the District Court Judge erred in ruling that Plaintiff did not state a claim as a matter of law for retaliation and granting summary judgment for the claims.

VII.   Whether the District Court Judge erred in failing to apply The *Burlington Northern* materially-adverse-action standard for the retaliatory action alleged in this Title VII and civil rights discrimination lawsuit.

VIII.  Whether the District Court Judge erred in not recusing himself from the case because he was in an adversarial relationship with Plaintiff's attorney in a significant criminal case

## <u>SUMMARY OF ARGUMENT</u>

This is a retaliatory hostile work environment, wrongful failure to promote and retaliation case arising out of the wrongful denial of two promotions that Plaintiff/Appellant Jennifer Berkeley Carr ("Appellant") sought from her employer Defendant/Appellee New York City Transit Authority ("NYCTA"). Appellant contends that these were discriminatory denials of promotion. Plaintiff/Appellant's adverse treatment was based upon age, race and gender discrimination (in violation of Title VII, ADEA, and the federal Civil Rights Statutes 42 U.S.C.§§1981 and 1983) and retaliation for her having complained about the fact that the Defendant New York City Transit Authority, through Plaintiff's supervisors Defendants/ Appellees Marva Brown and David Chan (hereinafter "Appellees") created a retaliatory hostile work environment when they denied Plaintiff promotions, denied her transfers, eliminated her support staff, gave her additional burdensome assignments, failed to sign documents that would grant her earned civil service

protection status, gave her adverse performance evaluations that culminated into a loss of pay, created employment rules only for Plaintiff and created workplace isolation for Plaintiff. Accordingly, the district court dismissal of the case should be reversed.

## **PROCEDURAL HISTORY**

On December 27, 2016 A-2 Appellant filed her Complaint alleging discrimination pursuant to Title VII based on her race and sex. Appellant also charged violations of the ADEA and Section 1981 race and hostile work environment claims. Additionally, Appellant alleged that NYCTA violated § 1983 by not following their own personnel policies and procedures on evaluating and providing equal employment opportunity to its employees.

Appellees appeared in the action on March 7, 2017. A-6 Appellees filed their fully briefed motion for summary judgment pursuant to Rule 56, Federal Rules Civil Procedure on or about March 19, 2019. A-6

Appellees filed a motion for summary judgment that was granted dismissing all claims in the Complaint: Count I of violation of Title VII based on race and gender discrimination against NYCTA; Count III alleging a violation of § 1981 based on hostile work environment because of race discrimination against NYCTA and Counts VI and VII alleging race discrimination pursuant to § 1981 against NYCTA.

-4-

On March 31, 2022 A-10 Appellant filed her second motion request to reargue the Court's grant of summary judgment to Appellees supported by the Affidavit of Gregory Smith. The court denied Appellant's request. On April 13, 2022 A-10 Appellant filed a timely notice of appeal.

### STATEMENT OF FACTS[1]

Appellant Carr, an African American woman of Caribbean descent age 59 at the time commencement of the adverse actions relevant hereto was employed by Defendant/Appellee New York City Transit Authority (hereinafter, "Appellee NYCTA"). She was employed by Appellee NYCTA as a Director in the Communications and Systems, Capital Programs Division, Department of Subways. Appellant was hired by NYCTA in 2000 as a Manager in Budget and Administration, MetroCard Operation. In 2006 Plaintiff was promoted to

---

[1] The district court wrongly overlooked and set aside Appellant's Rule 56.1 Responses. The Court said: "I disregard the improper assertions…. [of Appellant's counsel]." District Court Opinion and Order at A-2384 F.N. 2. The district court committed error, first because it ignored the fact that Appellees did not follow Local Rules of the United States District Courts for the Southern and Eastern District of New York, Local Civil Rules 56.1 (a) by not making "separate, short and concise statements in their numbered paragraphs" and (2) by violating Judge Batts' (the presiding Judge at the time of submission) Individual Practices. Additionally, many of Appellees statements of fact were in facts statements concerning credibility. See for example, Appellees 56.1 Statement of Material Facts at ¶¶ 22, 53, 55, 68, 99, 152, 200, 203, 207, 208….If Appellant was to follow Judge Broderick's Order Appellant would have had to admit virtually all of Appellees' [material] statements of fact and thereby surrender the motion and the case.

Director, Acceptance and Engineering Review, Department of Subways. From 2012 until she retired on June 1, 2022, Appellant had the title of Director of Telecommunications and Systems, Capital Programs within the Department of Subways. Plaintiff has a Bachelor of Arts degree in Economics from Brooklyn College and a Master's in Public Administration degree from New York University. See Carr Decl. ¶¶ 1, 3, 9; resume A-2172-73.

Appellant has always performed her job duties and responsibilities satisfactorily or better and was given high ratings in her performance evaluations. This changed when she complained of unfair discriminatory treatment to: (1) Appellee Brown,[2] (2) Appellee Brown's boss, Senior Vice President Leader ("S.V.P. Leader") on or about (August 21, 2014 and February 24, 2015) (3), the NYCTA's Equal Employment Opportunity ("TA-EEO") unit on or about (September 3, 2014 and February 18, 2015) and last (4) the United States Equal Employment Opportunity Commission ("EEOC") on or about (May 11, 2015 and May 25, 2015) A-1674-90 (EEOC Charge of Discrimination and Amended charge).

Appellant complained twice to NYCTA's S.V.P. Leader on August 21, 2014 and again on February 24, 2015 after being directed to do so by the TA-EEO;

---

[2] On or about August 21, 2014 Appellant complained to Brown about unfair promotions after she went to talk to Brown's supervisor about unfair promotions and hiring. See Carr Decl. ¶ 20 A-1072; Carr Tr. A-1376-77.

-6-

Appellant made two (2) TA-EEO complaints: September 3, 2014 and again on February 18, 2015, and finally Appellant filed a Charge of Discrimination with the EEOC on May 11, 2015 following her discriminatory denial of two (2) promotions by Appellee Brown, acting on behalf of the NYCTA, who gave those promotions to younger, non-African American males. Appellant was further subjected to retaliation and a retaliatory hostile work environment because of her age, race, gender and complaints of discrimination. See Leader complaints, Carr Decl. A-1072 ¶¶ 20-21, A-1075 ¶ 34, TA-EEO complaints A-590-91; A-819-835; A-1655-71, Carr Tr. A-204-205.

As background information regarding the hierarchal structure of Appellee NYCTA, it assigns lettered levels from "A" down to show ranking in a unit. Under this structure, a "B" level supervisor is at a lower level than an "A" level supervisor. The NYCTA also uses Hay points to designate the work done within a job assignment, so that an increase in job responsibilities in a particular assignment would cause the position to be "re-hayed" (TA terminology referring to a "Hay Point Reevaluation") with additional hay points. See for e.g., Carr Decl. A-1067-68 ¶¶ 2, 3, 9, 11.

In 2004, when Appellant was first assigned to the Department of Subways, her supervisor was Naja Zarzour ("Zarzour"), a high level, "A" Level Senior Director in the Communications Unit. He consistently gave Plaintiff "Excellent"

performance evaluations ratings. Carr Decl. A-1067 ¶ 2. The duties of her assigned Communications unit, in the Capital Programs Division, within the Department of Subways ("DOS"), was to manage the 5-year capital budget for the DOS. Specifically, this required the coordination and development of the long-range 20-year needs assessment, which leads to the 5-year capital plan.   Capitol Programs Division is responsible for managing the development and allocation of capital funds which include reviewing and processing of capital budget modifications and procurement, staff summaries and project master plans, reviewing of budget estimates, performing long-range planning and analyses, resolving appropriation issues for design and construction managers and issuance of several reports, one of which is the quarterly Critical Issues Report.  Capitol Programs Division of DOS essentially is responsible for adequately insuring funding for the DOS and monitoring timelines and safety compliance for the funded assets of the DOS. Carr Declaration at ¶ 4, A-1068 ¶ 4.

Appellant's supervisor Zarzour retired in 2010 and was not replaced. Between 2010 and 2014, Appellant was the employee responsible for running the Communications and Systems program area formerly overseen by Zarzour.  In that position, her work involved frequent interaction and meetings to ensure adequate capital funds with representatives from the Department of Capital Program Management (CPM) staff, including Engineers, Program Managers, Design and

Construction managers who were in her assignments to specifically address technical matters within their expertise. Carr Declaration at ¶ 5, A-1068. At all relevant times, it was Appellant's job to ensure that all DOS's capital needs were addressed. Appellant oversaw all facets of program development and management of communications and new technology and related projects within the DOS. Appellant negotiated and resolved issues, prioritize requests from DOS's operating divisions based on emergency and safety needs, and negotiated funding levels. Carr Decl. A-1068 ¶ 6. After Zarzour resigned, Appellant reported to Donald Tsang, Sr. Director who also gave her excellent reviews. Carr Decl. A-1067-68 ¶ ¶ 3, 7; Tsang Aff. A-1092-94.

Appellee Marva Brown ("Appellee Brown") was Vice President and Chief Officer at all times relevant to this action. Carr Decl. A-1069 ¶ 8. After Donald Tsang retired in 2011, Appellant self-managed the Communications unit because her new supervisor Joan Newbold (assigned by Appellee Brown), was neither assigned to Communications nor physically located on the same floor as Appellant. Carr Decl. at ¶ 10, A-1068. Newbold described Appellant as an excellent and knowledgeable worker, who communicated well and worked well with others. Newbold Aff. A-1083-85 ¶¶5-9.

Starting in 2011, because of the Zarzour and other vacancies in CPM, Appellant was given additional responsibilities. In 2011, Appellee Brown told

Appellant her position would go through what the NYCTA calls a "re-haying" process. Appellee Brown re-hayed Appellant's position for a promotion-in-place ("PIP") to a C Level Director, where she remained until her retirement[3]. Appellee Brown did not give Appellant her requested higher title of Senior Director. Brown gave Appellant a delayed and less than promised raise. Carr Declaration A-1069 ¶ 9, and A-1111-1112 Response to 56.1 ¶¶ 24-29; Carr Tr. A-1349.

When Newbold transferred in 2012, Appellant continued to self-manage the Communications unit as Appellant's replacement supervisor, Amy Kaufman, also was assigned to a different unit and floor. Carr Decl. A-1069 -70 ¶¶ 10-11.

In 2013 Appellant applied and was interviewed for a promotion to a position reporting to Appellee Brown, that of Senior Director, Program Management and Oversight. See Job Vacancy Notice ("JVN") A-2167. Appellant was qualified for the position, but she was denied the promotion by Appellee Brown on November 25, 2013. Brown gave that promotion to Joseph DiLorenzo, a younger white male. See Applicant Flow Data Report A-2183.

In 2014 another promotional vacancy was posted by Appellee Brown for the B Level position of the Senior Director, Program Management & Analysis with DOS. On June 9, 2014 Appellant's former title was posted. See JVN A-2169.

---

[3] Appellant retired from NYCTA effective June 1, 2022.

Appellee Brown denied her the promotion.   It was given to Appellee Chan who is an Asian male, younger than Appellant. See Applicant Flow Data Report A-2184.

On August 21, 2014 Appellant met with Appellee Brown's supervisor Senior Vice President DOS Joseph Leader to complain about Appellee Brown's unfair promotion practices and to request a transfer out of Appellee Brown's unit. Carr Decl. A-1072 ¶ 20; Carr Tr. A-1372-74.  As the outcome of Appellant's complaint, Appellee Brown was told of this meeting[4].  Appellee Brown reprimanded and intimidated Appellant by telling her she should not have gone to her boss. Carr Tr. A-1375-77; 56.1 Resp. A-1142 ¶ 111.  Additionally, supervisor Leader did not file a report of the complaint with TA- EEO (as required by TA- EEO protocol), did not conduct an investigation or take any action to address Appellant's complaint. See Rule 56.1 Resp. A-1146 ¶ 125; NYCTA Respectful Workplace Policies. A-766.

Within three weeks, although Appellant Brown had not announced it, Appellee Chan told Appellant of his promotion on September 8, 2014. See A-1145, Rule 56.1 Resp. ¶ 120 and Appellant's TA-EEO complaint A-600 at page 7.  On or about September 29, 2014 Appellant filed a charge of discrimination with the TA-

---

[4] The evidence is that Brown met with Appellant at a September 10, 2014 meeting wherein Appellee Brown stated to Appellant "I told you not to go to my boss"…Hence, Appellee Brown shows her  animosity against Appellant at a relevant time: the beginning her creation of a hostile work environment for Appellant that would last thought this instant litigation. See TA-EEO email to Appellant dated October 15, 2014 at A-816 stating the relevant date of September 10, 2014.

EEO. A-1655-71. Appellee Brown had knowledge that Appellant had not only complained to her supervisor Joe Leader on August 21, 2014, but also, that Appellant had complained to the TA-EEO on September 19, 2014. See for example TA-EEO email to Brown dated September 29, 2014 asking permission to talk to Appellant in connection with her EEO matter. A-811

Appellant made another EEO complaint on February 18, 2015. Carr Tr. A-204-205; Rule 56.1 Resp. A-1150-51 ¶¶ 135-36. She also filed a complaint with supervisor Leader. Having received no positive results from those charges, on May 11, 2015, Appellant filed a Charge of Discrimination with the federal EEOC. A-1674-90.

After Appellant's complaints to Leader and TA-EEO, Appellee Chan added significantly increased job responsibilities. They included among added responsibilities, Elevator and Escalator Communications. Carr Tr. A-207 at p. 152. Appellee Chan initially functioned as Senior Director on a part-time basis from October, 2014 until December 1, 2014. Id. Appellee Chan completed Appellant's 2014-year end evaluation with Appellee Brown. Appellee Chan gave Appellant two marginal ratings in her 2014 performance evaluation ("MPR") based upon responsibilities beyond her job description that lowered her review from Excellent to Good. A-208 pp. 153-154, Carr Decl. A-1073 ¶¶ 25-28; MPR A-1597-1601. In

that evaluation[5] preparation, Appellee Brown crossed out Appellee Chan's good rating for leadership skills and changed it to a marginal rating. See Chan Tr. A-461-62.

Appellee Chan denied having spoken to Appellee Brown about Appellant having filed complaints against her for discrimination.  During his deposition testimony, Appellee Chan gave testimony that he did not know that Appellant filed a charge of discrimination against him until he was served with the Complaint in the federal court case in January, 2017. A-505, Chan Tr. p. 100. Chan was not truthful. The fact that this was false is, at the minimum, evidenced in the district court Judge's opinion finding that Appellee knew of the Appellant's complaint at much earlier time, in June 2015, evidenced by the email communications between Appellee Chan and Appellant. See District Court Opinion and Order A-2409-10. An even earlier notification may also be inferred from the fact that shortly after Appellee Brown was notified by Leader of Appellant's discrimination complaint, Appellee Chan went to Appellant and told her of his promotion.  Appellee Brown

_____

[5] Marva Brown and David Chan conspired to economically hurt Appellant by giving her gradually increasing marginal evaluations until Appellant could no longer get a wage increase that all other workers with satisfactory employment reviews received. Even though this conspiratorial conduct happened over the course of 2-3 years the marginal MR's that led to no wage increase for Appellant should be considered as part of the hostile work environment that Appellees Brown and Chan created. See descending MPR's at A-1601-1607.

used Appellee Chan as her tool to downgrade the draft MPR ratings of Appellant. Chan Tr. A- 458-468.

Moreover, there is evidence that Appellee Chan attempted to cover up the fact that Appellee Brown helped him to downgrade Appellant's 2014 MPR by asking Amy Kaufman, Appellant's former supervisor, to agree with his negative statement concerning Appellant's 2014 employment performance (should it come up in the future). Chan's deceit is evidenced by the fact that the email chain between he and Kaufman is dated June 5, 2015, however, Appellant's 2014 MPR was signed by Chan on May 20, 2015 and by Appellant on May 27, 2015, several days before Chan ever talked to Kaufman about Appellant's performance. See email A-860 and MPR's A-1600-1601. Hence, this is strong evidence that Appellee Chan conspired with Appellee Brown to damage Appellant's employment.

Based upon the above facts, a juror could have rejected Appellee Chan's statement that he lacked knowledge of Appellant's complaints that were filed with Leader and the TA-EEO in the fall of 2014. On February 18, 2015 Appellant made a complaint against Appellee Chan with the TA-EEO that was summarily rejected without investigation. Carr Tr. A-204 pp. 138-40, A- 204. The EEO gave the instruction to report the complaints to Leader. Appellant notified Leader who took no action. Carr Tr. A-204-205.

-14-

Title VII provides protection for employees opposing discrimination proscribed by the statute. "Title VII combats unlawful employment practices, and it does so principally through reliance on employee initiative. In recognition of this fact, Congress enacted the anti-retaliation clause to shield an employee from employer retaliation following the employee's attempt to challenge discriminatory conduct. The Supreme Court has therefore opined that a primary purpose of § 704(a) is to 'maintain unfettered access to statutory remedial mechanisms.'" *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 174-75 (2d Cir. 2005) (citations omitted).

Appellant brought this lawsuit because, not only was she discriminatorily denied promotions, thereafter Appellees Brown and Chan subjected Appellant to retaliatory public humiliation, abuse (in the form of removing and/or not replacing her staff, overbearing assignments, denying and threatening denial of her leave time) and other hurtful conduct. This also included: decreasing performance evaluation ratings, denial of raises and her earned Civil Service protected appointment, increased assignments with unrealistic completion deadlines, harassing communications, denial of or threats to deny vacation requests, wrongly classifying medical time off as vacation time, employment isolation, and public criticism. Carr Decl. ¶¶29, 34, A-1074-1077; MPR's, A-1590-1622.

"[I]ncidents comprising a hostile work environment are part of one unlawful

employment practice, the employer may be liable for all acts that are part of this

single claim.  In order for the charge to be timely, the employee need only file a

charge within 180 or 300 days of any act that is part of the hostile work

environment.  *Amtrak v. Morgan,* 136 U.S. 101, 118, 122 S. Ct. 2016, 153 L. Ed.

2d 106 (2002).

After February, 2015 Appellee Chan became even more openly hostile to

Appellant, giving her additional work in the form of special assignments. See Carr

Tr. See A-1072-74 Carr Decl. ¶¶ 20-29; A-1150-51, Rule 56.1 Resp. ¶¶ 135-137.

These were assignments beyond her core duties. For example, Chan berated

Appellant's staff. A-1692-1697; A-1086-1091, Jackson Aff. ¶¶ 9, 10, 14.

Sometime in 2015 Appellee Chan gave Appellant a massive assignment to write a

twelve hundred (1200) page Employee Training Manual for the DOS. A-1701-

1704. Carr Tr. A-1409-10.

Beginning in September 2015, Appellees required Appellant to start and

complete a baseless assignment identified as the completion of an Operating

Budget Impact ("OBI") document and accompanying manual. See A-1705- 1773.

This despite the fact that Appellant had already completed this assignment in 2015.

A-1074-75 Carr Decl. ¶¶ 32, 34, bullet points 5-6.  In a display of unwarranted

hostility, Appellee Brown wrongfully criticized Appellant for not completing the

-16-

assignment in her 2017 MPR goals even though it was completed. Id. It was a futile document because Appellee Brown did not have the authority for its implementation. *Id.*

Appellant was also assigned to complete a Communication Strategy Plan. See A-1074 Carr Decl. ¶ ¶ 30-31; A-1801-1870, and a Critical Issues Report A-1872-1885.  Appellee subjected Appellant to extra scrutiny and work, became more unjustly critical of her work, ignored her completion of assignments, wrote her up for missing deadlines on projects that he knew were stalled by other Appellee NYCTA employees and threatened to cancel her identified vacation time. A-1174 -76, Rule 56.1 Resp. ¶ 191.

Appellee Chan used Appellant's earned vacation time as a weapon against her.  A-1194, Rule 56.1 Resp. ¶ 248. For example, within days of her approved vacation, Appellee Chan told her if a report was not ready he would not allow her to take her vacation.  Appellant had to cancel her vacation out of fear that she would not meet Appellee Chan's deadlines. Carr Tr. A-1415-20; A-1194, Rule 56.1 Resp. ¶ 248. See also, A-1996-2027.  Appellant was also required to provide Appellee Chan with weekly detailed progress reports. A-1774-1800. Some of those requests were made by Appellee Chan well after her workday had ended, i.e. 1:35 a.m., 2:09 a.m. See for example, A-1775-1794.  Appellee Chan criticized Appellant for not completing a Communications assignment when she was not given the

assignment as witnessed by a fellow employee present at the meeting when Appellee Chan claimed he assigned the task to Appellant. A-1803-1805. Appellee Chan sent hostile, disrespectful emails to Appellant. A-1886-1974.

Appellant also sought, twice took, and passed two examinations to obtain Civil Service protection and accompanying benefits for her official title. As a demonstration of retaliatory animus, Appellee Brown arbitrarily and spitefully denied designation of Appellant's earned Civil Service classification on two occasions by not taking the ministerial steps of signing the required forms. See A-1975- 1995. This even though Appellee Brown had protected her own employment civil service status. A-1155, Rule 56.1 Resp. ¶ 147.

Analysts assigned to Appellant were removed, reassigned or resigned (because they were berated) by Appellee Chan after Appellant filed her discrimination complaints. A- 190-93; Rule 56.1 Resp. ¶¶ 238-44; A-1692-1698; Carr Tr. A-1392-1412; Carr Decl. ¶ 21 A-1072. Appellee Chan had all new analysts (used as support staff) assigned to report to him while Appellant no longer had any analysts' direct reports. A-1075, Carr Decl.¶ 34; A-2060-2064. After Appellant filed her TA- EEO complaints (between 2015 and 2018), Appellee Chan dissuaded employees from working with Appellant.

In Chan's actions to make Appellant uncomfortable and isolated in her employment, Appellee Chan: (1) told staff and analysts in his unit not to take

-18-

instructions from Appellant, (2) fired one analyst for doing so and (3) told Appellant of the unavailability of his analysts for her work. A-1076 Carr Decl. ¶ 34.  Appellee Chan belittled Appellant's job title in meetings.  He warned at least one of his reportees about her and told another employee that Appellant was evil, fostering what a co-employee concluded to be a hostile work environment.  See letter statement of Laura Kopczynski. A- 1080. One of Appellant's former analysts described Appellee Chan as unprofessional and hostile in his communications with Appellant.  See Weinzimmer Aff. A-1095-1101 at ¶¶ 12, 25-26. Appellee Brown was notified of Appellee Chan's unprofessional behavior and did nothing.  A-1086-91 Jackson Aff. ¶¶ 9-10.

Another reportee of Appellee Chan stated that Chan warned him to stay away from Appellant and indicated that having to work with Appellant was unfortunate.  This contrasted the employee's own experience with Carr.  He stated that he had a positive impression of Appellant' s work, she assisted him with his projects and it was Chan's supervision that caused him to resign.  A-1095-1101 Weinzimmer Aff.  ¶¶ 12,13, 20, 25 and 26.

As a result of the extra work, stressful work environment, belittlement and harassment, Appellant had to receive regular psychological and psychiatric mental health care, including medication to address the harm caused by their actions.  Carr Tr. A-1432. The actions of Appellants caused Appellant anxiety attacks and fear of

work, especially since her first Monday morning assignment was to meet with

Appellee Chan. Carr Tr. A-1433-34.

## **ARGUMENT**

### **THE COURT IMPROPERLY GRANTED SUMMARY JUDGMENT ON THE DISCRIMINATION AND RETALIATION CLAIMS**

Summary Judgment Standard

This Circuit in *Kaytor v. Electric Boat Corp.* held with regard to summary

judgment: "In determining whether the moving party is entitled to judgment as a

matter of law… the district court may not properly consider the record in

piecemeal fashion, trusting innocent explanations for individual strands of

evidence; rather it must 'review all of the evidence in the record'… This is

especially so in considering claims of hostile work environment…. And in

reviewing all of the evidence to determine whether judgment as a matter of law is

appropriate, 'the court must *draw all reasonable inferences in favor of the*

*nonmoving party,' ….[E]ven though contrary inference might be reasonably*

*drawn, s*ummary judgment is inappropriate when the admissible materials in the

record 'make it arguable' that the claim has merit,… for the court in considering

such a motion "'*must disregard all evidence favorable to the moving party that the*

*jury is not required to believe,'*"…. In reviewing the evidence and the inferences

that may reasonably be drawn, the court '*may not make credibility determinations*

*or weigh the evidence. . . . Credibility determinations, the weighing of the*

*evidence, and the drawing of legitimate inferences from the facts are jury*

*functions, not those of a judge.'...* 'Where an issue as to a material fact cannot be

resolved without observation of the demeanor of witnesses in order to evaluate

their credibility, summary judgment is not appropriate.'" *Kaytor v. Electric Boat*

*Corp.*, 609 F.3d 537, 545-46 (2d Cir. 2010) (citations omitted).

**I.     JUDGE BRODERICK ERRED IN FAILING TO APPLY HIS
        STATED LAW WITH REGARD TO THE RETALIATORY
        HOSTILE WORK ENVIRONMENT CLAIMS BECAUSE HE
        DID NOT REVIEW THE FACTS UNDER THE OPINION'S
        CORRECTLY STATED STANDARD OF WHETHER THE
        OFFENDING ACTIONS WOULD DISSUADE A
        REASONABLE WORKER FROM MAKING OR SUPPORTING
        A CHARGE OF DISCRIMINATION**

To prevail on a retaliation claim, an employee "need not establish that the

conduct she opposed was in fact a violation of Title VII,' but rather, only that she

had a "good faith, reasonable belief' that the underlying employment practice was

unlawful. *Reed v. A.W. Lawrence & Co., 95* F.3d 1170, 1178 (2d Cir. 1996)

(citation omitted). The Federal law retaliation claims at issue here are reviewed

under the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S.

792, 802-803, 93 S. Ct. 1817 (1973)   *See also, Hicks v. Baines*, 593 F.3d 159, 164

(2d Cir. 2010);  *Gorzynski v. JetBlue Airways Corp.,* 596 F.3d 93, 106 (2d Cir.

2010)); *in accord, Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142,

120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).

Under the *McDonnell Douglas* case the initial burden is on plaintiff to establish a prima facie case of retaliation, the employer must then articulate a legitimate, nondiscriminatory reason for its actions and then the plaintiff is to establish that the employer's articulated reason was a pretext to mask unlawful retaliation. *McDonnell Douglas Corp. v. Green, Ibid*.

To establish a prima facie case, the plaintiff must show: " '(1) 'participation in a protected activity'; (2) 'the defendant's knowledge of the protected activity'; (3) 'an adverse employment action'; and (4) 'a causal connection between the protected activity and the adverse employment action.' *Jute v. Hamilton Sundstrand Corp*., 420 F.3d 166, 173 (2d Cir. 2005) (citations omitted). The plaintiff's burden of proof as to this first step 'has been characterized as 'minimal' and 'de minimis.' Id. (citations omitted); *Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 843-44 (2d Cir. 2013).

The district court's Opinion incorrectly held that Appellant had failed to present the prima facie case of retaliation under the first step of the *McDonnell Douglas* framework. In that Opinion the district court Judge found that Plaintiff, while meeting the first three elements of a prima facie case, failed to demonstrate causation. A-2411[6]. In the court's analysis of causation, it improperly utilized "severe and pervasive" conduct as the standard causation in the retaliatory hostile

---

[6] "Plaintiff has made out the first three elements of the prima facie case." A-2409.

environment evidentiary review. After stating the failure of Appellant to demonstrate a prima facie case, the Opinion incorrectly concluded, in summary form, that Appellees had articulated a non-discriminatory reason for their action and Appellant had not shown it to be pretext. A-2412.

Appellant's establishment of the first and second elements that she participated in a protected activity that Appellees knew about is demonstrated by the fact that she filed complaints of discrimination with Appellee NYCTA, top level manager, Joseph Leader on August 21, 2014 , she made a telephonic complaint with TA-EEO on September 2, 2014, Case #2014-09-30-00004 at A-1655. This was followed up by Appellant sending a summary of her complaint to TA- EEO on September 3, 2014. [A-1655] and a written complaint memorandum on September 23, 2014 A-1662-1671. Appellant made subsequent complaints of the retaliatory hostile work environment to her supervisor Appellee Chan on February 17, 2015, to TA-EEO, on February 18, 2015 specifically identifying Appellee Chan. A- 819-20, A-617, 204, 610 (footnote 5), Carr Tr. 138:9- 139:6. She also followed the instruction of TA-EEO and provided a memorandum to supervisor Leader once again expressing her statements that she was subject to retaliatory harassment in the form of emails received from Appellees Brown and Chan A-834, A-1904-1916. This was the same supervisor Leader who earlier told Appellee Brown of Appellant's August, 2014 complaint to him.

Appellant filed a charge of discrimination with EEOC on May 11, 2015.
A-1674-1686. A Notice of this EEOC charge was sent to Appellee NYCTA's
General Counsel on May 18, 2015. See A-1673. An Amended EEOC complaint
was filed on May 27, 2015. A-1687-1689. The employer was aware of her
protected activity since August 21, 2014, because she initially complained to
management in the role of supervisor Joseph Leader who told her direct supervisor
Appellee Brown.

Regarding the third element of Appellant's prima facie case, adverse
employment actions, Appellant was subjected to multiple retaliatory harassing
adverse employment actions that created a hostile work environment. The
retaliatory adverse employment actions started on or before September 29, 2014
when Appellee Brown was contacted by the TA-EEO to schedule an appointment
for Appellant to come in connection with an EEO matter and increased in
magnitude and severity until at least 2018, including loss of pay raises in 2016 and
2017. See TA-EEO email A-811. See MPR's A-1597-1622. Appellees contended
that these allegations were insufficient to show a retaliatory hostile work
environment, but merely showed an unpleasant and tense working environment.
A-2380.

The district court Opinion regarding retaliatory adverse actions incorrectly
only accepted the negative 2016 and 2017 MPRs that disqualified Appellant from

wage increases as adverse actions. A-2411. It rejected any other actions. It stated the 2014 negative performance review rating did not rise to the level of a retaliatory action because Appellant had not suffered a monetary loss from that action. A-2410.

Appellant demonstrates the fourth element: that the retaliation was causally connected to the protected activity. From the initial complaint to Leader, Appellee faced conduct intended to deter discrimination complaints. The Appellee NYCTA has a protocol in place for employee complaints. It requires that managers and supervisors notify TA-EEO of complaints. A-764-765. Instead of following that protocol, Leader immediately told Appellee Brown of the complaint. Appellee Brown's reaction to the complaint was to reprimand and subtlety threatened Plaintiff by telling her: "I told you not to go to my boss." The fact that the only outcome of the complaint was for the supervisor of the alleged wrongdoer Appellee Brown to be notified, instead of following Appellee NYCTA's EEO directives to report such complaints to TA-EEO A-764-65, by itself is an action that would dissuade a reasonable worker from making a charge of discrimination.

In September, 2014 Plaintiff filed a charge of discrimination with NYCTA EEO A-590. On or about October 13, 2014 Appellee Brown retaliated by making an announcement of the promotion of Appellee Chan with the humiliating statement that Appellant would not be reporting to Appellee Chan. See email

A-816. On or about September 18, 2014 Appellee NYCTA denied Appellant her requested transfer out of Appellee Brown's unit. A-1072, Carr Decl. ¶20.

After the TA EEO charges were filed and before the year 2014 was over her two (2) assigned analysts were removed from her staff. A-1072, Carr Decl. ¶21. In approximately November, 2014 Apellee Chan became visibly more hostile in communicating with Appellant. He subjected her to verbal abuse. A-1087-88, Jackson Aff. ¶ 9, Appellee Brown was aware of this through the email chains. A-1087-88, Jackson Aff. ¶¶ 10. Analyst Jackson was dissuaded from remaining employed with Appellees because of the hostility he observed and felt while he tried to work with Appellant after Appellee Chan arrived in October, 2014. A-1087-88, Jackson Aff. ¶¶ 10,14. Because of the hostile work environment analyst Jackson resigned in March, 2015. A-1087-88, Jackson Aff. ¶16. Jackson was not replaced, but Appellees continued to give Appellant additional assignments with unrealistic deadlines. A-1075, Carr Decl. ¶34.

From 2015 until 2018 Appellees hired 3 analysts to work for Appellee Chan while Appellant received no replacement for her 3 analysts. A-1076, Carr Decl. ¶20. Similarly, following her complaint to Appellee Chan on February 17, 2015 that he was engaged in harassment, and next day notification to TA-EEO of the harassment by Appellees Chan and Brown , the hostile conduct intensified See emails between Appellant and TA-EEO. A-819-833 for example. On February 24,

2015 Appellant also notified supervisor Leader of the harassment by Appellees Chan and Brown at A-834. On May 20, 2015, Appellant received her first negative ratings in her MPR since she started employment in 2000. A-1072, Carr Decl. ¶26.

With regard to the fourth element of a prima facie case, that of causation, in *Davis-Garett v. Urban Outfitter, Inc*. 921 F.3d 30 (2d Cir. 2019), an ADEA case, this Court held that the pre-*Burlington Northern* precedent limiting retaliation claims to actions affecting the terms and conditions of employment—as the "severe or pervasive" discriminatory hostile work environment standard does—"no longer represent[s] the state of the law." *Davis-Garett*, 921 F.3d at 43. The case held that after *Burlington Northern*, the inquiry is whether the conduct at issue well might have dissuaded a reasonable worker from making or supporting a charge of discrimination, not Appellant's employment and create an abusive working environment. *See id.*

In the instant case, the district court Judge applied the incorrect standard to the facts with regard to the material adverse action requirement. Although earlier in the district court Opinion it states the correct "Applicable Law" standard that: "On 'the third element, the proper inquiry is 'whether the alleged adverse action to which the plaintiff was subjected could well have dissuaded a reasonable employee in his position from complaining of unlawful discrimination.'" In the "Application" of the law to the facts it incorrectly applies the harsher "severe or

-27-

pervasive" standard.  It states that: "[i]n order to establish a retaliatory hostile work environment a plaintiff must satisfy the same standard that it applied generally to hostile work environment claims… . [That the hostile conduct] is sufficiently severe or pervasive to alter the condition of the victim's employment.'" A-2411 (*citing Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 570 (2d Cir. 2000)).  This despite the fact that this Court has now held that the "severe or pervasive" discriminatory hostile work environment standard is no longer the appropriate standard." *Davis-Garett*, 921 F.3d at 43.  The district court  concluded,  under this incorrect standard, that Plaintiff did not meet that burden based upon "anything in the record."  A-2411 (*citing Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 570 (2d Cir. 2000)) and quoting language from that decision's status discrimination discussion (non-retaliatory, hostile work environment holdings.)  The standard applied by the district court Judge is incorrect under the *Kessler* decision as applied in *Davis-Garett*, decision.

"The final element in plaintiffs' *prima facie* case is to demonstrate a causal relationship between the protected activity and the adverse employment action. *See Jute*, 420 F.3d at 173. "[P]roof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or

-28-

(2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. N.Y. City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000).

In this fourth element of causation, the district court Opinion only utilized the MPRs to address the question of whether or not Appellant established a causal connection to support a retaliation claim. A-2410-11. It ignored the other hostile actions identified by Appellant. In the district court's Opinion, the "Application" of the law to the facts section for causation also incorrectly applied the harsher "severe or pervasive" test as the standard for a retaliatory hostile work environment. It specifically stated that: *"[i]n order to establish a retaliatory hostile work environment a plaintiff must satisfy the same standard that it applied generally to hostile work environment claims… . [that the hostile conduct] is sufficiently severe or pervasive to alter the condition of the victim's employment."* A-2411 (emphasis added). The district court Opinion cited *Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 570 (2d Cir. 2000) and quoted language from that decision's stand alone, non-retaliatory, hostile work environment holdings. This conflicts with this Circuit's holding that for an Appellant to be successful in allegations of retaliatory hostile work environment conduct under Title VII, ADEA and 1981 the finder of fact must find that it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Kessler v. Westchester Cnty*

*Dep't of Soc. Servs.*, 461 F.3d 199, 207 (2d Cir. 2006) (Title VII and ADEA retaliatory hostile work environment); *see, Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (§ 1981 and Title VII retaliatory hostile work environment).

Based upon the severe or pervasive standard the district court concluded that Appellant failed to show how the 2014 MPR rating, or anything in the record, "could allow a reasonable juror to infer the existence of 'severe or pervasive' 'discrimination.'" A-2411.

The Opinion held that the negative 2014 MPR was not actionable because it did not result in a loss of a wage increase. A-2410. This is not the only factor that should have been utilized by the district court.

"The quoted language [of Title VII] makes it abundantly clear that Congress did not intend to confine the scope of Title VII simply to instances of discrimination in pecuniary emoluments." *Rodriguez v. Board of Educ. of Eastchester Union Free Sch. Dist.*, 620 F.2d 362, 366 (2d Cir. 1980).

This Circuit has recognized that "'[e]xamples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, *or other indices unique to a particular situation*.' We have held that the assignment of 'a disproportionately heavy workload' can constitute an adverse employment action…. '[A] negative

evaluation, or the threat of a negative evaluation, while not an adverse employment action that affects terms and conditions of employment, might dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85, 92 (2d Cir. 2015). *(citing, Krinsky v. Abrams*, No. 01-CV-5052 (SLT)(LB), 2007 U.S. Dist. LEXIS 38376, 2007 WL 1541369, at *11 (E.D.N.Y. May 25, 2007) (other citations omitted) (emphasis added).

Appellant asserted that it was not the negative evaluations alone that constituted the retaliatory conduct. The district court Order selectively accepted only the 2016 and 2017 MPRs as retaliatory conduct ignoring the additional actions evidenced in the Appellant's summary judgment opposition submissions. This Circuit has held that "[p]iecemeal review of the record 'is especially [inappropriate] in considering claims of hostile work environment,'… an environment that….'occurs over a series of days or perhaps years' and has a 'cumulative effect,'…" *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 46 (2d Cir. 2019) (citations omitted).

"'The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed.'… Therefore, "an act that would be immaterial in some situations is

material in others." ... For example, '[a] schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children.' … And of course context can diminish as well as enlarge material effect.  This Circuit has held that, in the court's determination of whether conduct amounts to an adverse employment action, the alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently 'substantial in gross' as to be actionable…." *Hicks v. Baines*, 593 F.3d 159, 164-65 (2d Cir. 2010) (internal citations omitted).

Retaliation occurs when an employer takes action against an employee not because of his protected characteristics, "'but because he engaged in protected activity'" that is he complained about or otherwise opposed discrimination. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 91 (2d Cir. 2015).  In the instant case Appellant was retaliated against because she filed numerous complaints against Appellees, starting with her discrimination charge.

Similar to the plaintiff in Feingold, Appellant here subjectively experienced a hostile work environment causing her to need psychological and psychiatric counseling, to dread going to work and to seek a transfer.  *Feingold v. New York,* 366 F.3d 138 at 144 (2d. Cir. 2004).  Appellant has met her burden with regard to the third, adverse action prong of *McDonnell Douglas*.

The Appellant has also demonstrated causation. As this Circuit has stated: "Causation can be established either indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus. ... Summary judgment is precluded where questions regarding an employer's motive predominate in the inquiry regarding how important a role the …[protected act] played in the adverse employment decision. *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999) (citations omitted).

Appellant met her burden of proof on her prima facie case. After she learned that she was denied by Appellee Brown for her second applied for promotion Plaintiff made the discriminatory conduct known to Appellee Brown's supervisor Joseph Leader on August 21, 2014. Informal complaints to management of a belief that wrongfully discriminatory conduct has occurred are protected conduct. *Grant v. Hazelett Strip-Casting Corp.*, 880 F.2d 1564, 1569 (2d Cir. 1989). The acts of retaliation commenced immediately thereafter.

Appellee Brown humiliated Plaintiff by immediately announcing in a meeting the selection of Appellee Chan and reiterated that Plaintiff would be reporting to him. Appellee Chan working under the direction of Appellee Brown. Appellees gave additional assignments to Plaintiff, and assigned her work outside of her job description. In November, 2014 Appellees denied Appellant a requested

transfer out of Appellant Brown's unit. Appellee Chan denied her requested vacation and threatened to take away approved vacation dates. For example, Appellee Chan would not approve Appellant's vacation if he was going to be working alone or if he was taking vacation time. See A-1417-1419.

The scrutiny and additional assignments were so unbearable that Plaintiff had to seek psychological treatment. Plaintiff complained to Appellee Chan of harassment on his part on February 17, 2015. A-819. She followed up on February 18, 2015 and filed a specific complaint against Appellee Chan with Appellee NYCTA EEO. A-819. It was not investigated, but was summarily rejected the same day, as was her follow-up notice of subsequent harassing conduct by Chan. A-818, 827-829. In response to her complaints Appellant was sent to supervisor Leader to resolve her complaints. A-205, Carr Tr. 142:13-143:14. Even though she knew that supervisor Leader had earlier alerted Appellee Brown to Appellant's complaints against her, Appellant complied with the TA- EEO instruction. A-834. Appellant never received a response from Leader, although Appellee NYCTA has a protocol in place that would have required reporting the complaint of harassment. A-205, Carr Tr. 143:15-17; A-757.

The district court opinion, based upon its earlier incorrect limitation of adverse actions to the 2016 and 2017 MPRs, came to the improper conclusion that there was no demonstration of proximate cause. It stated that there was no

temporal proximity to the 2014 complaints made by Appellant and the 2016 and 2017 MPRs. A-2013 -2014.

With regard to causation, the district court Opinion also incorrectly concluded that Appellee Chan did not have knowledge of Appellant's EEO charge before he gave Appellant her adverse MPR rating on May 20, 2015 [7] so the complaints could not have caused the ratings. Appellee Chan had knowledge. In addition to the direct complaint made to him on February 178, 2015, the employer, Appellee NYCTA, received notice through statements by Appellant to supervisor Leader and direct complaints by Appellant to TA EEOC that started in September, 2014. In addition, Appellee Chan was operating under the direct supervision of Appellee Brown who had knowledge from her supervisor Leader.

Appellee Chan is responsible for having corporate knowledge of charges made to TA EEO and charges sent to it by the EEOC. This Circuit has held that "for purposes of a prima facie case, a plaintiff may rely on 'general corporate knowledge' of her protected activity to establish the knowledge prong of the prima facie case." *Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 844 (2d Cir. 2013) (Plaintiff's complaint to officer of corporation deemed sufficient to impute knowledge to the corporation as a whole)(citing, *Gordon v. N.Y.C. Bd. of Educ.*,

---

[7] The Opinion incorrectly states that "Plaintiff's EEO charge is dated May 18, 2015. It is clear that the initial TA-EEO complaint was dated September 23, 2014 (A-1662) and even the EEOC charge was dated May 11, 2015. A-1674.

232 F.3d 111, 116 (2d Cir. 2000) (the Second Circuit has ever held that a plaintiff may satisfy the knowledge requirement by showing general corporate knowledge that the plaintiff has engaged in a protected activity.)

Also, "[t]o the extent that decisionmaker knowledge is relevant in establishing causation, that knowledge may be satisfied by demonstrating that 'the agent who decides to impose the adverse action but is ignorant of the plaintiff's protected activity *acts pursuant to encouragement by a superior* (who has knowledge) to disfavor the plaintiff.'" *Summa v. Hofstra Univ.*, 708 F.3d 115, 127 (2d Cir. 2013) (citations omitted) (knowledge imputed where there was no direct evidence that decisionmakers were told directly to take negative action, a reasonable jury could conclude they either that a superior with knowledge either allowed or encouraged the negative action).

The district court Opinion went further to state that even if it was found that Appellant demonstrated a prima facie case, it would hold that Respondents rebutted that case, based on his acceptance of disputed evidence that the adverse retaliation resulted because of Appellant's job performance and personality, "thus warranting the negative performance reviews." A-2412. This holding does not conform to the rules for resolving summary judgment motions. "The principles governing a district court's consideration of a motion for summary judgment … are well established. In ruling on such a motion, 'the district court is required to

resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment.'" *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 45 (2d Cir. 2019) (citations omitted).

Here the District Court Judge resolved all ambiguities in favor of the movant party Appellees and against Appellant who was opposing the summary judgment motion. The district court Opinion's example of rebuttal evidence by Appellees, that Appellee Brown's August 20, 2014 sending of Appellant to the NYC Leadership Institute demonstrates an effort to get Appellant experience at A-2413, demonstrates the basic misunderstanding the facts of the case. The August 20, 2014 actions pre-date Appellant's complaint and retaliatory hostile action allegations. It wasn't until August 21, 2014 that Appellant made her first complaint of discrimination to SVP Joe Leader. The district court Opinion also states that the August 20, 2014 date is three (3) years from the Appellant "next suffer[ed] an adverse employment action…." A-2413. Although it does not identify the adverse action to which it is referring, it appears to be the 2017 MPR rating. This ignores Appellant's receipt of hostile retaliatory harassing actions in the three (3) year period (from 2014 to 2017) that culminated into Appellant's second failure to receive a raise. In this conclusion, the Opinion has not weighed Appellant's evidence of retaliatory hostile conduct and has instead improperly credited all ambiguities in favor of the party moving for summary judgment.

"While a Title VII plaintiff need not prove that retaliation was the only motivating factor for an adverse action, *see Gordon*, 232 F.3d at 117, the plaintiff must show that retaliation was the determinative factor, *see Matima v. Celli*, 228 F.3d 68 at 81 (2d Cir. 2000). In this Circuit, it is 'settled that a plaintiff in a Title VII action need not disprove a defendant's proffered rationale for its adverse actions in order to prevail.' *Gordon*, 232 F.3d at 117. In assessing whether a plaintiff has established that an adverse employment action was motivated by discriminatory retaliation, 'there are two distinct ways for a plaintiff to prevail— either by proving that a discriminatory motive, more likely than not, motivated the defendants or by proving both that the reasons given by the defendants are not true and that discrimination is the real reason for the actions.'" (internal quotation marks omitted). *Summa v. Hofstra Univ.*, 708 F.3d 115, 129 (2d Cir. 2013).

A plaintiff may provide proof that the defendant's explanation is unworthy of credence, or a combination of factors is probative of intentional discrimination in order to be persuasive that a defendants negative actions were a pretext for impermissible discrimination. *Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 102 (2d Cir. 2001).

In their summary Judgment motion Appellees argue there was no "evidence suggesting that Plaintiff's assignments, MPRs or work memoranda were directed at dissuading her from making complaints of discrimination, rather than at ensuring

that she complete her assignments…. Plaintiff was not the subject of any formal discipline, reduction in pay or material responsibilities….” (A-1053). Appellees' assertions that the extra assignments lower MPRs and negative work memoranda were intended for a positive reason is contradicted by the timing and circumstances of the additional duties and criticisms because they did not happen until after Plaintiff complained of discrimination.

The assertion is also undermined by the fact that Plaintiff's support staff was eliminated—support that would have demonstrated an intent to make her successful in addressing the increased assignments, negative MPRs and work memoranda. The Appellees are asserting actions of using a stick instead of a carrot as an inducement for successful performance by Appellant. A reasonable employee would be dissuaded from making or supporting a charge of discrimination knowing that following such a complaint the employer would use the equivalent of a stick to ensure that they complete their assignments.

Retaliation is demonstrated if a retaliatory motive played a part in the adverse employment actions even if it was not the sole cause. Additionally, Appellant was not required to disprove the Appellees stated non-retaliatory reasons for their negative actions. Appellant does not have to prove the falsity of Appellees' statements. Appellant must only demonstrate that a retaliatory motive played a part in the adverse employment actions because that constitutes retaliatory

animus. A violation occurs whenever there is retaliatory animus, regardless of whether a valid objective reasons for the negative action exists. *See Fields v. N.Y. State Office of Mental Retardation & Developmental Disabilities*, 115 F.3d 116, 120 (2d Cir. 1997).

The employer violates retaliation protections if the plaintiff demonstrates retaliatory animus, even if there were objectively valid grounds for the negative actions. *Sumner v. United States Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990). Here retaliatory animus is shown through the constant negative consequences to her filing complaints of discrimination described in the factual assertions provided above. This is especially demonstrated by the fact that Appellee Chan was not truthful about the date he learned of Appellant's complaints and the date he spoke to Amy Kaufman about Appellant's performance review for her 2014 MPR.

Temporal proximity is also appropriately demonstrated for the retaliation claim stated in the instant case. Appellee Brown was made aware of Plaintiff's complaint of unfair hiring and promotional practices to Joseph Leader on or about August 21, 2014 and Plaintiff's request for a transfer. If Brown did not know then she definitely knew of Plaintiff's protected activity on September 10, 2014 because that is when Brown told Appellant "I told you not to go to my boss." A-816 and Brown is told again of Appellant's complaint on September 29, 2014. A-811. All of the harassing events begin to take place at that point and after, including the

hostile and disrespectful emails to Appellant coming mainly from Chan that

prompt Plaintiff to make a third complaint against him on February 18, 2015. See

*Amtrak v. Morgan,* 136 U.S. at 118.

Appellees Brown and Chan's retaliatory harassing conduct toward Appellant

adds up to a retaliatory hostile work environment that is itself an adverse

employment action that would dissuade a reasonable employee from filing or

supporting a charge of discrimination.

In the instant case, the district court erred by not examining the totality of

the circumstances, including: the frequency of the discriminatory conduct; its

severity; whether it is physically threatening or humiliating, or a mere offensive

utterance; and whether it unreasonably interferes with the victim's …[job]

performance." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir.2003).

"A plaintiff may prove that retaliation was a but-for cause of an adverse

employment action by demonstrating weaknesses, implausibility's, inconsistencies,

or contradictions in the employer's proffered legitimate, non retaliatory reasons for

its action. From such discrepancies, a reasonable juror could conclude that the

explanations were a pretext for a prohibited reason." *Kwan v. Andalex Grp., LLC*,

737 F.3d 834, 846 (2d Cir. 2013) (citations omitted).

Appellant is able to show many implausible and contradictory statements

made by Appellees in order for a reasonable juror to conclude they were a pretext

-41-

for retaliatory actions.  As examples of these: (1) Appellee's Chan's statement that he did not know about Appellant's discrimination claims until her January, 2017 filing of her lawsuit was determined to be false in the district court Opinion finding that he knew of the lawsuit in June, 2015.  A-505, A-2409-10.

In addition, his testimony that he consulted with Amy Kaufman before giving Appellant her 2014 MPR rating is contradicted by his June 5, 2015 email to Kaufman thanking her for talking to him about Appellant "yesterday and stating that he will need her input. A-458, Chan Depo. 29:21-25; A-860. (2) But for retaliation in this case because Appellant filed a charge with TA-EEO on or about September 29, 2014, she would not have received intensive scrutiny and additional special assignments by Appellees Chan and Brown. The Appellees' denial of intensive scrutiny and additional special assignments contradicted by evidence in Appellant's Statement of Facts above demonstrates that their denial is implausible. (3) But for Appellant complaining to Appellees and EEOC (respectively commencing in September, 2014 and on May 11, 2015).

Appellant would not have been subjected to harsh treatment, scrutiny, special assignments and subsequent negative MPRs.  Appellees' justification statements about Appellant's performance and her abilities are contradicted by her former supervisors Newbold and Tsang. A-1083-1085, A-1092-1094.  In particular they contradict Appellees' assertions that Appellant had deficiencies in writing

-42-

skills, knowledge, in meeting deadlines and had work relationship problems. A-7, 8  9; A-1093 at¶ ¶7, 8, 9.  Accordingly, from these conflicting statements a jury could conclude that the explanations were a pretext for wrongful retaliation.

Appellant states that but for retaliation in this case, she would not have been threatened by Appellee Brown, and had follow-up hostile actions of additional special assignments, hostile communications and intense scrutiny, for reporting her discrimination to Supervisor Leader. The Appellee Brown threatening statement that:  "I told you not to go to my boss" is direct evidence of the but for relationship and indicates that was the motivation for her hostile actions. A-816.  Appellant also asserts that but for retaliation in this case after Appellant filed a charge with TA-EEO on or about September 29, 2014 she would not have lost analysts who reported to her and helped her with projects thereafter. A-1609 ¶9.

Additionally, but for Appellant complaining to Appellee Chan and TA- EEO on February 17 and 18, 2015 Appellant would not have suffered subsequent adverse actions by Appellees, including increased harsh treatment, scrutiny and special assignments made more intolerable because of hostile language by Appellee Chan in front of another employee and resulting negative MPR ratings. See A-1087-88,  Jackson Affidavit ¶ 9.

## **PLAINTIFF STATES A CLAIM FOR DISCRIMINATION**

Discrimination claims under the ADEA[8], Title VII and 42 U.S.C. § 1981 are analyzed under the same burden shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); see for e.g., *Delaney v. Bank of America Corp*.., 766 F.3d 163, 167 (2d Cir. 2014). ("It is well established that the burden-shifting framework set forth by the Supreme Court's decision in *Gross v. FBL Financial Services, Inc.,* 557 U.S. 167, 173, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009)). The disparate treatment analytical framework developed under Title VII is equally applicable to age discrimination under the ADEA and intentional race discrimination under § 1981. *Patterson v. Oneida,* 375 F.3d 206, 225-27 (2d. Cir. 2004). Accordingly, *McDonnell Douglas* analytical framework applies in all three discriminatory claims herein, Title VII, ADEA and 42 U.S.C. § 1981.

The function of this framework is to allow the plaintiff to raise an inference of discriminatory intent indirectly. The plaintiff must establish a prima facia case of discrimination, the employer must then articulate a legitimate, nondiscriminatory reason for its actions and, in order to prevail, the plaintiff must establish that the employer's articulated reason was a pretext to mask unlawful discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). "Since

---

[8] Age Discrimination in Employment Act, 29 U.S.C.S. § 621 *et seq.*,

a plaintiff prevails by showing that discrimination was a motivating factor, it can

invite the jury to ignore the defendants' proffered legitimate explanation and

conclude that discrimination was a motivating factor, whether or not the

employers' proffered explanation was also in the employers' mind." *Fields v. New*

*York State Office of Mental Retardation and Developmental Disabilities,* 115 F.3d

116, 121 (2d Cir. 1997) (internal citations omitted).

### PLAINTIFF ESTABLISHED A PRIMA FACIE CASE OF DISCRIMINATION BASED ON AGE, RACE AND GENDER IN THE DENIAL OF TWO PROMOTIONS

In 2013 and 2014 Appellant was denied two promotions to Senior Director

positions within the Department of Subways. The first promotion was to Senior

Director Program Management and Oversight ("PMO") and the second promotion

was to Senior Director Program Management and Analysis ("PMA"). The burden

of establishing a prima facie case of disparate treatment is not onerous. The

plaintiff must prove by a preponderance of the evidence that she is (1) a member of

a protected group, (2) applied for an available position for which she was qualified,

(3) that she experienced an adverse employment action, and (4) that such action

occurred under circumstances giving rise to an inference of discrimination…This

burden is not a heavy one … *Gorzynsky v. JetBlue Airways Corp.,* 596 F.3d 93,

106 (2010) (internal citations and quotation marks omitted).  Plaintiff need only

show a minimal plausible inference of discrimination to show causation. *Littlejohn v. City of New York*, 795 F. 3d 297, 312-313 (2d Cir. 2015)

Appellant has met her minimal burden of showing a *prima facie* case. First, Appellant shows that she was a member of a protected group in that she is a woman of African-Caribbean descent over the age of forty (40[9]) who has alleged discrimination on the basis of age, race and gender. Second, Carr undisputedly was qualified for the positions of Senior Director Program Management and Oversight and Senior Director Program Management and Analysis having responsibility for and successfully running the Communications and Systems Program Area as Director Telecommunications and Systems within the Division of Capital Programs, Department of Subways from 2010 until 2014. See Carr Decl. ¶¶ 3-5 at A 1067-68, 56.1 Response ¶ 4 at A-1103, Affidavit of Joan Newbold at A-1083-85 and Affidavit of Donald Tsang at A-1092-94.

Third, Carr's allegations, if credited, show that she suffered three (3) adverse employment actions (a) denial of promotion to Senior Director Program Management and Oversight hereinafter ("PMO") given to Joseph DiLorenzo, age 53 who is a younger White man on or about February 3, 2014 Carr Aff. ¶ 12 at A-1070, 56.1 Response ¶ 57 at A-1105 (b) denial of promotion to Senior Director

---

[9] At the time the motion for summary judgment was made Jennifer Carr was age 63. See 56.1 Response ¶ 4.

Program Management and Analysis hereinafter ("PMA") also known as Senior

Director Communications given to David Chan age 53 on or about August 20,

2014, who was a younger non-African American, Asian male. See Carr Aff. ¶ 17 at

A-1071, 56.1 Response ¶ 12 at A-1105 and (c) a hostile work environment created

by Appellee Marva Brown on or about August 21, 2014 after Appellant

complained of unfair hiring and promotional practices to Defendant Brown's

supervisor Joe Leader.  Carr Aff. ¶ 20 at A-1072, 56.1 Response at ¶¶ 109-112 at

A-1141-42.

As to the [third] element, a plaintiff sustains an adverse employment action

if he or she endures "[a] materially adverse change in the terms and conditions of

employment that might be indicated by a termination of employment, a demotion

evidenced by decrease in wage or salary…or other indices…unique to a particular

situation."  *Galabya v. NYC Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)

(internal citation omitted). There is no question that denials of promotions

constitute adverse employment actions for purposes of stating a prima facie case of

discrimination.  *Anderson v. New York City Health & Hosp. Corp.,* 2020 U.S. Dist.

LEXIS 36772*83 (S.D.N.Y. March 2, 2020). An adverse employment action also

"includes requiring people to work in a discriminatorily hostile or abusive

environment." *Littlejohn v. City of New York*, 795 F.3d 297, 320 (2d Cir. 2015).

Lastly, (4) Appellant shows a minimal inference of discrimination in being denied two promotions that she sought because the two positions were given to younger non-Black male candidates. As a result, Appellant has plausibly stated a minimal inference of discrimination. See, *Littlejohn v. City of New York*, 795 F. 3d 297, 312-313 ("An inference of discrimination also arises when an employer replaces a terminated or demoted employee with an individual outside of the employee's protected class…A plaintiff has demonstrated an inference of age discrimination…where the majority of plaintiff's responsibilities were transferred to a younger co-worker.") *Id.* (internal citations and quotation marks omitted). The district court in the case at bar agrees that plaintiff has met her burden of proof in setting forth a *prima facie* case of discrimination based on age, race and gender. See District Court Opinion and Order at page A-2400-01.

## THE EMPLOYERS' PROFFERED REASONS FOR THE DENIAL OF PROMOTIONS ARE MERE PRETEXT TO MASK DISCRIMINATION

### A. Appellant Was Denied Promotion to PMO Because of Age, Race and Gender Discrimination

Appellant was denied the first promotion to Senior Director Program Management and Oversight ("PMO") under circumstances that lead to an inference of discrimination based on her age, race and gender. Appellant applied for the PMO position in 2013, she was interviewed for the PMO promotion on or about October 13, 2013; Appellant was denied that promotion by Appellee Brown on or

about November 25, 2013. (A-2183) Appellee Brown promoted Joe DiLorenzo who was a younger White male to the PMO position. Rule 56.1 Resp. ¶ 11 at A-1105, ¶¶ 36-40, 55 at A-1115-16, 20.  Appellant was told by Appellee Brown that she had given the position to DiLorenzo on or about February 3, 2014. The reason that Brown gave for promoting Joe DiLorenzo over Appellant was that she wanted to take the unit "in a different direction". . . . Brown testified that she made certain changes in the unit and her [requirements] and that she wanted someone who had a technical background. See Response to 56.1 Statement ¶¶ 55, 57 at A-1120-22. These stated reasons were pretext for actions that were motivated by discrimination.  Rule 56.1 Response ¶¶  57-67, A-1122-25.

For example, Appellant testified that on February 3, 2014 while inside of Brown's office, that Appellee Brown asked Appellant "what will you do if you don't get the job?" Appellant responded by stating that she would continue to do her job.  Appellee Brown went on to tell Appellant that she was giving Joe DiLorenzo the PMO position because she doesn't "think the position is the 'right fit' for [Appellant]" and that Appellant is "not ready for the next level." Carr Tr. A-1362-63. However, under questioning, Brown did not admit meeting with Appellant on February 3, 2014 in her office; she also denied having said that the position is "not the right fit" for Appellant but, Brown had to admit that she told

-49-

Appellant that Joe DiLorenzo received the promotion. Brown Tr. A-1449-51, 56.1 Response ¶60, A-1123.

Appellee Brown also did not abide by the PMO job description for desired skills. The description list 6 items that are desired skills. Technical background is not mentioned. JVN at A-2167.

According to Appellee Brown's testimony she added "technical skills" to the list of desired skills. Thus, the district court erred by crediting Appellee Brown's testimony and her reasons for not promoting Appellant. *Medeiros v. Pratt & Whitney Power Sys.*, 272 Fed. Appx. 78, 80 (FN 2) (2d Cir. 2008). (Summary judgment must be denied after examining the evidence in the light most favorable to the nonmoving party, … a reasonable jury could return a verdict for the nonmoving party).

The district court should have analyzed Appellee Brown's contradictory evidence, as the court must, in the light most favorable to Appellant. The district court incorrectly substituted its opinion on Appellee Brown's credibility for the opinion of the jury. This Court has weighed in on this very issue previously. "[A]t summary judgment in an employment discrimination case, a court should examine the record as a whole, just as a jury would, to determine whether a jury could reasonably find an invidious discriminatory purpose on the part of the employer… 'an invidious discriminatory purpose may often be inferred from the totality of the

relevant facts.'" *Byrnie v. Town of Cromwell, Bd. of Educ.,* 243 F.3d 93, 101 (2d Cir. 2001)(internal citation omitted). Under the facts of this case a jury could reasonably disregard Defendant Brown's testimony.

This Court has "cautioned that 'an employer may not use wholly subjective and unarticulated standards to judge employee performance for purposes of promotion.'" *Id.* at 104 *Byrnie* v. *Town of Cromwell, Bd of Educ.,* 243 F.3d 93, 102 (2d Cir. 2001) (internal citation omitted). "This is because any defendant can respond to a [discrimination charge] with a claim of some subjective preference or prerogative and, if such assertions are accepted, prevail in virtually every case." *Id.* at 104-105

"[I]n entertaining a motion for judgment as a matter of law, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Products*, *Inc.* 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)(internal citation omitted). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Ibid.* "Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Id.* at 151. (internal citation omitted). "Proof that the defendants' explanation is unworthy of credence is …one form of

circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive." *Reeves,* 530 U.S. at 147.

Appellant was deemed qualified for the PMO position. 56.1 Response ¶ 42. The panel that interviewed Appellant consisted of all White managers who reported to Brown except, one Black representative from Human Resources who acted as a monitor. Rule 56.1 Resp. ¶ 41. Appellant was the oldest candidate selected to be interviewed. Although Appellee Brown did not sit on Appellant's interview panel, she did choose Amy Kaufman, Appellant's supervisor to be a part of Appellant's panel.

During the time that Amy Kaufman supervised Appellant, Kaufman and Appellant had a negative conflict over a vacation issue. Therefore, Kaufman may have harbored some animosity against Appellant having nothing to do with Appellant's job performance. Carr Decl. ¶ 3 A-1068, Carr Tr. A-1357-60; Rule 56.1 Resp. ¶¶ 68-73 at A-1126-28.

After the panel interview, panelist Robert Levine stated to Appellant that she was referred for the job and that she was one of the top two candidates. Rule 56.1 Response ¶ 48, A-1118, Carr Tr. A-1365. Appellee Brown did not give Appellant a second interview even though she was one of the top two referrals and even though Appellee Brown asked the panel to give her the names of the top three referral candidates. Rule 56.1 Resp. ¶ 50, A-1119. According to Robert Levine,

Joseph DiLorenzo was not one of the candidates that was referred for the job. Rule 56.1 Resp. ¶¶ 36-51 at A-1115-19, A-1303 ¶9.

The district court erred by not reviewing this and other contradictory credibility evidence in the light most favorable to Appellant. Credibility is a question for the jury. *Reeves v. Sanderson Plumbing Prods.,* 530 U.S. at 146. Another example of Appellee Brown's questionable credibility is where Appellee Brown stated that she gave Appellant a second interview for the PMO position, then Brown changed her testimony and said she probably did not give Appellant a second interview for the first (PMO) promotion, but that she did give Appellant a second interview for the second (PMA) position compared with Appellant's sworn statement that Brown did not provide her a second interview for either the PMO or the PMA position. See Brown Tr. A-1450-52, Carr Decl. ¶ 35 at A-1077.

## B. Brown Discriminatorily Denied Appellant's Second Sought After Promotion to PMA

The denial of Appellant's second requested promotion to Senior Director Program Management and Analysis (the PMA promotion) also known as the Senior Director Communications position was particularly painful because this was Appellant's successful job function since 2004. Moreover, Appellant was designated as the leader of the Communications Unit from 2010 to 2014. Carr Decl. ¶¶ 2, 3, 5 A-1067-68, 56.1 Response ¶ 22, A-1110. Appellant received excellent performance reviews in this role from 2008 to 2013. A-1592- 96 Carr

Decl. ¶ 5 A-1068 Tsang Aff. ¶¶ 7-10, A-1093, Newbold Aff. ¶¶ 5-9 A-1084.

Hence, Appellant avers that because she had performed the job for many years and

did an excellent job that she was qualified for the PMA promotion. Appellees

concede this fact. Rule 56.1 Statement Response ¶85 A-1132.

>    1.  The 2015 New York City Leadership Institute
>        Was Meant to Appease Appellant

For the employment performance evaluation year ending 2011 Appellee

Brown rated Appellant's performance as excellent in her job as Director of

Communications. A-1594.  Defendant Brown thought so highly of Appellant's

performance over the years that she highly recommended Appellant to the New

York City Leadership Institute in August 2014. A-1579-80.  However, the

circumstances of Appellee Brown's recommendation is probative of her intent not

to promote Appellant into the Senior Director Communications position that

Appellant had worked so diligently to obtain. The evidence that Defendant Brown

attempted to cover up her wrongful denial of promotion to Appellant was shown

by Appellee Brown's attempt to appease Appellant by recommending her for the

2015 New York City Leadership Institute.

Appellee Brown's intent not to promote Appellant to the PMA position is

illustrated by the timeline for Appellee Brown's recommendation of Appellant to

the Leadership Institute.  For example, on July 30, 2014 Appellant was interviewed

for the PMA position. RFA ¶10 A-1303. On August 20, 2014, Appellee Brown

informed Appellant that she would not be promoted to Senior Director Communications. RFA ¶¶ 11-14, A-1303-04. However, the Applicant Flow Data Chart (A-2184) shows that Appellee Brown selected Defendant Chan for the PMA position seven (7) days before she announced her promotion decision to Appellant. According to the Chart Appellee Brown selected Defendant Chan for the PMA promotion on August 13, 2014.

Accordingly, the timeline shows that from August 13, 2014 until August 20, 2014 Brown thought about how she would inform Appellant of her decision not to promote her to the PMA position. Brown Tr. A-1493-97, Carr Decl. ¶ 5 A-1068, ¶¶ 15-18 A-1070-71. " In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." Reeves at 147. "Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as 'affirmative evidence of guilt.'" *Ibid.* citing *Wright v. West,* 505 U.S. 277, 296, 112 S. Ct. 2482, 120 L. Ed.2d 225 (1992).

### 2. The Chan Interview Panel Composition Was Different From The DiLorenzo Interview Panel Indicating Intent to Discriminate

The circumstantial evidence points to the conclusion that discrimination was a motivating factor in Appellant's denial of promotion to the PMA position also known as the Senior Director Communication position. The panel for the PMA

-55-

position consisted of two decision makers and one human resources representative. The PMA decision makers were Appellee Brown and Deborah Chin. There was one Human Resources representative. See Applicant Flow Data Chart A-2184.

The earlier PMO promotion interview panel, in comparison, consisted of three decision makers: Amy Kaufman, Robert Levine and Timothy Forker, all direct reports to Martha Brown in the Capital Programs Division and one Human Resources representative. See *Id.* at A-2183, 56.1 Response ¶ 41, A-1117. According to Brown's testimony Human Resources representatives "do not ask questions, it's not always that way…" Brown Tr. A-1459:21-24.

Accordingly, there were only two decision makers for the PMA position: Martha Brown and Deborah Chin. The Human Resources person was there in a non- decision- making role. Brown Tr. A-1459. RFA ¶10 A-1303. However, Appellee Brown was the ultimate decision maker because the successful candidate would report directly to her. See A-2169, A-2184. Although Debra Chin was a decision maker on the Carr panel, her input was minimally persuasive because she did not possess an equal or higher rank, level or position within NYCTA as Appellee Brown possessed. Hence, Appellee Brown's decision was the one that mattered most. See 56.1 Response ¶¶82-83, A-1131-32, Applicant Flow Data Report A-2184. Chin was a manager in the Capital Program Management ("CPM") Department, while Brown was the Vice President and Chief Officer of the Capital

Program Division and the person to whom Appellant, if promoted, would have reported to. *Id.* CPM, on the other hand, was a separate and distinct department of the NYCTA wholly outside of the DOS. Carr Decl. ¶15 A-1070.

CPM employs design managers, engineers, and offers technical expertise to Capital Programs Division to insure that DOS capital assets are maintained adequately. Carr Tr. A-1351-52. While Chin was a decision maker on Appellant's interview panel, she had very little to do with Appellant's work product and even less involvement with Appellant on a day-to-day basis. Brown Tr. A-1484-85. Carr Decl. ¶ 15 A-1070.

Quite noticeably missing from Appellant's interview panel was any manager, apart from Brown, who worked with Appellant on a regular basis and who was familiar with her work performance and habits. This, in contrast to the PMO panel, where there were three decision makers who sat on that panel and were all from the Division of Capital Programs, DOS and presumably had more knowledge and experience with the work done in the Capital Programs Division. Unlike the first PMO panel where Appellee Brown may have asked for a second interview with certain candidates for promotion, there was no need for Appellee Brown to ask for a second interview with the highly rated candidates for the PMA position since she was the ultimate decision maker who also sat on the interview panel. In *Byrnie v. Town of Cromwell, Bd of Educ.*, 243 F.3d 93, 103 (2d Cir.

-57-

2001) this Court, vacated the district court's grant of summary judgment in favor of the employer on the plaintiff's disparate treatment claims on the ground that a reasonable jury could find the employers' reasons for failing to hire the plaintiff were not credible due to the "discrepancy in qualifications and the employers digressions from its established hiring procedures when considering the successful candidates application." See *Medeiros v. Pratt & Whitney Supra.* 272 at 81.

### 3. Brown's Requirement of Technical Experience And Training Is A Subterfuge For Unlawful Discrimination

Technical experience was neither a requirement nor needed in order to do the job of Senior Director Communications effectively. Appellant had been doing the job effectively from 2010 through 2014. Hence, this added requirement was a subterfuge for discrimination. See 56.1 ¶ 99 A-1136. Appellee Brown testified that the only two persons with technical backgrounds who report to her were DiLorenzo and Chan, both newly promoted by Appellee Brown. Appellee Brown testified that she likes that Chan has an electrical engineering background but she had to admit that he does not sign off on [engineering] drawings. Appellee Brown admitted that Defendant Chan did not actually use his engineering degree and that neither Appellant nor Chan has needed a technical background in order to do the work. Brown Tr. 1486-88. Both Defendant Chan and DiLorenzo were younger non-Black male candidates that Appellee Brown promoted under the pretense of needing a technical background. The best evidence to show that Defendant

-58-

Brown's excuse is pretext for discrimination is that Appellant did the job effectively for four (4) years. Appellee Brown had to admit this fact. Brown Tr. A-1454:6-13. As further support that Appellant should have been promoted is the fact that at least forty (40%) percent of the Senior Director's time was spent in the Communications area. See 56.1 Resp. ¶22 A-1110.

In the instant case, it appears that the district court erroneously disregarded Appellant's facts and arguments in her Rule 56.1 Response A-1102-1204. The Second Circuit Court of Appeals has repeatedly noted that summary judgment is ordinarily inappropriate where an individual's intent and state of mind are implicated. *Id.* citing *Meiri v. Dacon*, 759 F.2d at 989 (dictum) *Patrick v. LeFevre*, 745 F.2d 153, 159 (2d Cir. 1984) (citing cases).

Further, Appellant does not argue that she was more qualified than DiLorenzo or Defendant Chan. Appellant argues here that she was qualified for both promotions to (PMO and PMA) and that she was the best candidate for the jobs since she succeeded in the Director of Communications title for four years prior to the Senior Director job postings. The district court committed error when it did not consider Appellant's evidence including: the Carr Declaration at ¶¶ 3-7 A-1067-69, Newbold Affidavit A-1083-85, Jackson Affidavit ¶¶ 11-12 A-1088, Tsang Affidavit A-1092-94, the Kopczynski signed letter at A-1080 and the Pearce Aff. A-1081-85.

A summary judgment motion must be denied when, after examining the evidence in the light most favorable to the nonmoving party… a reasonable jury could return a verdict for the nonmoving party. *Medeiros v. Pratt & Whitney Power Sys.,* 272 Fed. App'x 78, 80 FN2. (internal citation and quotation marks omitted).

The district court improperly substituted its own assessment of the evidence of pretext for that of a reasonable jury. This Court has previously vacated a grant of summary judgment in such circumstances. *Ibid.* (citing for e.g., *D'Cunha v. Genovese/Ekerd Corp.*, 479 F.3d 193, 196 (2d Cir. 2007)) There is a "need for caution about granting summary judgment to an employer in a discrimination case where…the merits turn on a dispute as to the employer's intent." *Holcomb v. Iona Coll.,* 521 F.3d 130, 137 (2nd Cir. 2008), *Kwan v. Andalex Grp.,* LLC, 737 F.3d 834, 843 (2d Cir. 2013).

## **<u>CONCLUSION</u>**

Wherefore, Appellant, Jennifer Berkeley Carr respectfully request this honorable Court to reverse the District Court on the law and remand the case back for a trial on the claims raised herein.

Dated:      New York, New York
August 1, 2022

Respectfully submitted,

*/s/ Gregory Smith*
Gregory G. Smith
LAW OFFICE OF GREGORY SMITH
77 Sands Street
Brooklyn, New York 11201
(917) 748-2623
gsmith225@aol.com

*Attorney for the Plaintiff-Appellant*

On the Brief: Janet J. Lennon, Esq.

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because it contains 13,677 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times Roman 14-point font.

Dated:     New York, New York
           August 1, 2022

                              Respectfully submitted,

                              */s/ Gregory Smith*
                              Gregory G. Smith
                              LAW OFFICE OF GREGORY SMITH
                              77 Sands Street
                              Brooklyn, New York 11201
                              (917) 748-2623
                              gsmith225@aol.com

                              *Attorney for the Plaintiff-Appellant*

# SPECIAL APPENDIX

# TABLE OF CONTENTS

PAGE

Opinion and Order, dated April 12, 2022 . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  SPA-1

# SPA-1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                            :
JENNIFER BERKELEY CARR,          :
                            :
                  Plaintiff,   :
                            :        16-CV-9957 (VSB)
        - against -           :
                            :       **OPINION & ORDER**
                            :
NEW YORK CITY TRANSIT AUTHORITY, :
MARVA BROWN, and DAVID CHAN,   :
                            :
                 Defendants.  :
                            :
--------------------------------------------------------X

<u>Appearances</u>:

Gregory Gladstone Smith
Gregory Smith & Associates
Brooklyn, New York
*Counsel for Plaintiff*

Kathryn E. Martin
NYS Office of the Attorney General
White Plains, New York
*Counsel for Defendants*

Mariel Alyson Tanne
New York City Transit Authority
Brooklyn, New York
*Counsel for Defendants*

<u>VERNON S. BRODERICK, United States District Judge</u>:

      Plaintiff Jennifer Berkeley Carr ("Plaintiff") moves for my recusal and for an order

vacating my recent Opinion & Order granting summary judgment in favor of Defendants and

dismissing this action. (Doc. 70.) Because I find that an objective, disinterested observer fully

informed of the facts at issue in Plaintiff's motion would not have a significant doubt that justice

would be done in this case absent recusal, Plaintiff's motion is DENIED.

**SPA-2**

I.    <u>Relevant Background</u>

This action's factual and procedural background are set forth in my March 18, 2022 Opinion & Order granting Defendants' motion for summary judgment (the "SJ Opinion").  (Doc. 66.)  Familiarity with that Opinion & Order will be presumed, and I will only provide background necessary to understand the present motion.

Defendants' motion for summary judgment was filed on March 7, 2019 while Judge Deborah A. Batts still presided over this action.  (*Id.* at 11.)  The action was reassigned to me on February 20, 2020.  (*Id.*)  The SJ Opinion dismissed all of Plaintiff's remaining claims in this action on March 18, 2022.  (*Id.*)

On March 21, 2022, after I had been presiding over this action for two years, Plaintiff filed a letter motion for my recusal and to reopen this case.  (Doc. 68.)  Plaintiff's letter motion cited no authorities regarding whether and when judicial recusal is appropriate, and the only factual basis set forth for my recusal was that Plaintiff's counsel and I "were opposing counsel in a murder trial [the ('Restrepo Case')] that we conducted before Judge Scheindlin in the Southern District of New York in 2002."  (*See id.*)[1]  Plaintiff's counsel concluded the letter motion by writing, "Had Plaintiff had the opportunity to address this information when you were reassigned to this case, she would have respectfully asked you to recuse yourself to avoid any prejudice or even the appearance of such prejudice."  (*Id.*)

On March 22, 2022, I denied Plaintiff's letter motion without prejudice.  (Doc. 69.)  In my order denying the letter motion, I stated that "Plaintiff may file a motion seeking my recusal supported by appropriate briefing and citations to controlling Second Circuit law."  (*Id.*)  On March 31, 2020, Plaintiff filed the instant motion.  (Doc. 70; *see also* Doc. 70-6 ("Recusal Br.").)

---

[1] The "Restrepo Case" refers to *United States v. Restrepo*, 1:99-cr-01113-KBF-1 (S.D.N.Y.).

**SPA-3**

II.   <u>Discussion</u>

A.   *Applicable Law*

When a federal judge's recusal is sought due to "alleged bias or prejudice," the recusal

motion is considered "under [28 U.S.C.] §§ 144 and 455(b)(1)."  *Apple v. Jewish Hosp. & Med.*

*Ctr.*, 829 F.2d 326, 333 (2d Cir. 1987).  The "substantive standards" of each are the same, as

"under both sections," the "analysis . . . looks to extrajudicial conduct as the basis for making

such a determination, not conduct which arises in a judicial context."  *Id.*

When a judge's impartiality is questioned on bias or prejudice grounds, "what matters is

not the reality of bias or prejudice but its appearance."  *Liteky v. United States*, 510 U.S. 540, 548

(1994).  "That is, recusal is warranted if 'an objective, disinterested observer fully informed of

the underlying facts entertain significant doubt that justice would be done absent recusal.'"

*Moskovits v. Bank of Am. NA*, 20-CV-10537 (LLS), 2021 WL 467152, at *1 (S.D.N.Y. Feb. 7,

2021) (quoting *United States v. Yousef*, 327 F.3d 56, 169 (2d Cir. 2003)).

"The Second Circuit Court of Appeals has cautioned that when answering this question,

'the grounds asserted in a recusal motion must be scrutinized with care, and judges should not

recuse themselves solely because a party claims an appearance of partiality.'"  *Weaver v.*

*IndyMac Fed. Bank, FSB*, 09 Civ. 5091 (LAP), 2019 WL 6173789, at *1 (S.D.N.Y. Nov. 20,

2019) (quoting *In re Aguinda*, 241 F.3d 194, 201 (2d Cir. 2001)).  "[W]here the standards

governing disqualification have not been met, disqualification is not optional; rather, it is

prohibited."  *Aguinda*, 241 F.3d at 201.  "[R]ecusal motions are committed to the sound

discretion of the district court."  *United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir. 1992).

**SPA-4**

B.      *Application*

The crux of Plaintiff's argument on this motion is that, because her counsel and I represented opposing parties in the trial in the Restrepo Case in 2002, there is "an objectively reasonable basis for questioning whether [I] ha[ve] 'a deep-seated favoritism that would make fair judgment impossible." (Recusal Br. 6 (quoting *Liteky*, 510 U.S. at 555).)  Plaintiff's counsel cabins his position specifically to the Restrepo Case, saying that "[i]t is very unlikely that many, if any opposing counsel faced with the . . . facts and circumstances [of the Restrepo Case] could consciously or unconsciously resist being biased against their former adversary." (*Id.* at 5.) Plaintiff also mentions that I included the Restrepo Case on the questionnaire form I submitted to the United States Senate Committee on the Judiciary in a list of important litigation. (*Id.* at 5–6; *see also* Doc. 70-5, at 25.)

Plaintiff has failed to meet the applicable standard of demonstrating that "an objective, disinterested observer fully informed of the underlying facts" would "entertain significant doubt" as to whether I may have any bias toward Plaintiff's counsel, much less bias that may have factored into the SJ Opinion.  *See Aguinda*, 241 F.3d at 201 (quoting *Lovaglia*, 954 F.2d at 815); *see also id.* at 202 (explaining that "the appearance of partiality portrayed" in some circumstances "may be, at times, unreasonable" and thus not merit recusal).  Despite the direction in my order that Plaintiff's recusal motion be "supported by appropriate briefing and citations to controlling Second Circuit law," (Doc. 69), Plaintiff offers no authority or reasoning to support the argument that my status as opposing counsel to her attorney in a trial held over two decades ago would suggest a possibility of bias, and my own review of the law turned up no sources finding an appearance of bias stemming from even remotely analogous circumstances. Indeed, the law I did locate suggests the opposite.  *Cf. Lovaglia*, 954 F.2d at 814–16 (affirming

**SPA-5**

denial of a recusal motion that raised, among other things, that "the judge's former law firm had

represented one of the construction companies victimized by [criminal] defendants").  In

addition, there are myriad cases in this Circuit that hold a "judge's prior position as an [Assistant

United States Attorney]" is alone not a basis for recusal.  *See, e.g.*, *Couri v. Pavia*, 19 Civ. 5436

(KPF), 2019 WL 3553357, at *3 (S.D.N.Y. Aug. 5, 2019) (collecting cases); *Reilly v. Dep't of

Just.*, Civ. No. 3:16CV2024(VLB), 2017 WL 8292487, at *3 (D. Conn. Aug. 22, 2017) ("The

mere fact of prior service as an [Assistant United States Attorney] is not sufficient grounds

for recusal."); *McLean v. United States*, 08-cr-789 (RJS), 2016 WL 3910664, at *9 (S.D.N.Y.

July 13, 2016) (denying recusal motion where movant "only speculated about any bias or

prejudice due to the undersigned's prior position as an Assistant United States Attorney").

    Moreover, Plaintiff does not identify anything specific from the Restrepo Case that may

cause a reasonable person to think I ever harbored bias against her counsel, much less bias that

would have persisted for the twenty years since the Restrepo Case.  Plaintiff's counsel submitted

an affirmation, but it does not contain any facts from which it could be inferred that I harbored

any bias against him.  Rather, his descriptions of the Restrepo Case are generic to an adversarial

legal system like ours.  (*See, e.g.*, Recusal Br. 4 ("Counsel for the parties talked numerous times"

and "rarely, if ever, agreed on a resolution of evidentiary issues and rulings"); *id.* at 5 (stating,

"The antagonism between the opposing sides was very high," without providing any facts).)  In

other words, Plaintiff is merely speculating that my "prior position as an Assistant United States

Attorney" has led to bias, which is an argument that cannot carry the day.  *See McLean*, 2016

WL 3910664, at *9.  What's more, our adversarial system of justice necessarily leads to winners

and losers.  To require a judge's recusal merely because she had previously been an adversary of

an attorney appearing before her would be improper and unworkable.

**SPA-6**

Importantly, the applicable standard requires me to consider whether "an objective, disinterested observer fully informed of the underlying facts" may have "significant doubt" about a possibility for my bias.  *Aguinda*, 241 F.3d at 201.  Here, those "underlying facts" are:  (1) Plaintiff's counsel and I were opposing trial counsel twenty years ago; (2) I mentioned the Restrepo Case on a Senate questionnaire;[2] (3) this action has been assigned to me for two years, during which time Plaintiff never mentioned the Restrepo Case; (4) I granted summary judgment against Plaintiff; and (5) three days after my SJ Opinion, for the first time, Plaintiff raised the Restrepo Case as the basis for her recusal motion, (Doc. 68).  Faced with these facts, a reasonable observer would likely conclude that Plaintiff's counsel knew of his prior opposing counsel relationship with me from the Restrepo Case and thought nothing of it until after summary judgment was granted, at which point Plaintiff's counsel decided to file the present motion.[3]

---

[2] The relevant questionnaire question asked for "the ten (10) most significant litigated matters which [I] personally handled."  (Doc. 70-5, at 20.)  I included the Restrepo Case along with every other case I tried as an Assistant United States Attorney that was submitted to a jury for a verdict.  (*See id.* at 20–25.)  Plaintiff's counsel mentions that, on the questionnaire, I provided the contact information for his co-counsel from the Restrepo Case, but that next to Plaintiff's counsel's name, I wrote "unable to locate current contact information."  (Recusal Br. 6.)  A review of the Restrepo Case docket shows that Plaintiff's counsel's contact information on that docket sheet says he is associated with a firm in Atlanta, Georgia and provides a phone number with a Georgia area code.  *See Restrepo*, 1:99-cr-01113-KBF-1.  By contrast, the docket in this action lists Plaintiff's counsel as having a Brooklyn address and a New York area code.  The Restrepo Case docket sheet also lists counsel named "Gregory Scott Smith," *see id.*, whereas Plaintiff's counsel in this action is listed as "Gregory Gladstone Smith."  For present purposes, I assume that the Restrepo Case's docket information is the result of an error.

[3] Plaintiff's counsel states that he "was alerted to the fact that" I "may personally know him" through the Restrepo Case "[o]n March 21, 2022," which is the Monday after the Friday of March 18, 2022, when the SJ Opinion was entered on this action's docket.  (*See* Recusal Br. 2.)  In other words, Plaintiff's counsel represents that he did not remember me from the Restrepo Case until three days after the SJ Opinion.  (*But see* Doc. 68 (representing that Plaintiff waited until after the SJ Opinion was entered to seek my recusal because "Your Honor did not provide the parties an opportunity to determine whether or not . . . recusal was appropriate," not because Plaintiff's counsel had only recently remembered the Restrepo Case).)  This representation and Plaintiff's argument on the present motion—that I "may have granted [s]ummary [j]udgment" because of "personal bias" against him, (Recusal Br. 1)—is premised on the notion that, even though he represents he did not remember me, I must have remembered him.  This is a dubious premise given that Plaintiff's counsel's name is fairly common, but my name is rather unique.  *Compare* How Many of Me, http://howmanyofme.com/people/Gregory_Smith/ ("There are 6,540 people in the U.S. named Gregory Smith.") (last accessed Apr. 11, 2022), *with* How Many of Me, http://howmanyofme.com/people/Vernon_Broderick/ ("There are 6 people in the U.S. named Vernon Broderick.")

**SPA-7**

**III.     Conclusion**

For the foregoing reasons, Plaintiff's motion for my recusal is DENIED.  The Clerk of

Court is respectfully directed to terminate the open motion at docket 70.

SO ORDERED.

Dated: April 12, 2022
          New York, New York

Vernon S. Broderick
United States District Judge

---

(last accessed Apr. 11, 2022).

In any case, regardless of when Plaintiff's counsel became aware that he and I were opposing counsel in the Restrepo Case, the recusal motion must fail because there are simply no facts suggesting bias or prejudice.