# 22-792

## In the
## United States Court of Appeals
### For the Second Circuit

JENNIFER BERKELEY CARR,

*Plaintiff-Appellant,*

— v. —

NEW YORK CITY TRANSIT AUTHORITY, MARVA BROWN
and DAVID CHAN,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK (NEW YORK CITY)

## BRIEF FOR DEFENDANTS-APPELLEES

MARIEL A. THOMPSON, ESQ.
Executive Agency Counsel
New York City Transit Authority
*Attorneys for Defendants-Appellees*
130 Livingston Street, 12th Floor
Brooklyn, New York 11201
(718) 694-3893
mariel.thompson@nyct.com



# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................... iii

PRELIMINARY STATEMENT ........................................................1

QUESTIONS PRESENTED...............................................................3

I.   STATEMENT OF FACTS...........................................................4

   i.   The Position of Program Management & Oversight ("PMO").................5

   ii.  Following Dilorenzo's appointment, Appellant faces challenges
        with her then supervisor Amy Kaufman ....................................6

   iii. Appellant Applied for the Position of Program Management &
        Analysis ("PMA") ........................................................7

   iv.  Appellant complains to the TA's Dept of EEO & Diversity
        ("EEO") about the promotional decisions...................................9

   v.   Appellant's "Good" Performance Reviews for 2014 and 2015 ..............10

   vi.  Plaintiff's 2016 and 2017 "Needs Improvement" Performance Reviews ..12

II.  ARGUMENT......................................................................13

   A. THE DISTRICT COURT CORRECTLY GRANTED APPELEES'
      MOTION FOR SUMMARY JUDGMENT ...........................................13

         Standard of Review .......................................................13

   B. THE LOWER COURT APPLIED THE CORRECT STANDARD
      OF LAW TO APPELLANT'S RETALIATION CLAIMS ....................14

         i.   The district court correctly determined that Appellant's
              complaints about less positive performance reviews,
              unwanted assignments and work-related scrutiny failed to
              amount to an actionable retaliatory hostile work environment ....16

i

    ii.  After careful consideration of the record as a whole, the district court correctly determined that Appellant failed to satisfy the fourth element of her prima facie case of retaliation by demonstrating a causal connection between her protected activity and any demonstrated adverse employment action....................................18

        a.  Appellant's overall Good reviews for the years 2014 and 2015 were not adverse employment actions and all of her reviews otherwise lacked causal relation to her protected activity ...........................................................19

        b.  Appellant's other work-related complaints over the course of three+ years concerning assignments and excessive work scrutiny do not individually or in the aggregate, in context, amount to adverse employment action(s)................................................................................22

    iii.  Not-withstanding, the district court correctly determined that even if Appellant had made out a prima facie case of retaliation, she could not rebut or show that the legitimate, non-discriminatory, non-retaliatory reasons for her progressively lower performance reviews and other work-related emails/memoranda were pretext for retaliation ...............26

C.  THE DISTRICT COURT CORRECTLY DISMISSED APPELLANT'S FAILURE TO PROMOTE CLAIMS ...........................30

CONCLUSION ...................................................................................31

CERTIFICATE OF COMPLIANCE ......................................................32

# TABLE OF AUTHORITIES

Page

## Cases:

*Ali v. Mount Sinai Hosp.,*
No. 92 Civ. 6129 (JGK) NG), 1996 U.S. Dist. LEXIS 8079,
(S.D.N.Y. Jun. 12, 1996) ...................................................................................29

*Bowen-Hooks v. City of New York,*
13 F. Supp. 3d 179 (E.D.N.Y. 2014) .................................................................14

*Brown v. Paulson,*
236 F. App'x 654 (2d Cir. 2007) ......................................................................24

*Brown v. Snow,*
No. 02 Civ. 7985 (GEL), 2006 U.S. Dist. LEXIS 10251,
(S.D.N.Y. Mar. 13, 2006) .................................................................................24

*Burlington Northern & Santa Fe Ry v. White,*
548 U.S. 53 (2006) .....................................................................................16, 26

*Byrne v. Telesector Res. Grp., Inc.,*
339 F. App'x 13 (2d Cir. 2009) .........................................................................20

*Byrnie v. Town of Cromwell Bd. Of Educ.,*
243 F.3d 93 (2nd Cir. 2001) .............................................................................30

*Caldarola v. Calabrese,*
298 F.3d 156 (2d Cir. 2002) ........................................................................ 13-14

*Carr v. NYCT,*
16-CV-9957 (VSB), 2022 U.S. Dist. LEXIS 48731
(S.D.N.Y. March 18, 2022) .......................................... 14, 16, 18, 19, 20, 21, 26

*Clark County School District v. Breeden,*
532 U.S. 268 (2001) .........................................................................................21

*Cox v. Onondaga County Sheriff's Dep't,*
760 F.3d 139 (2d Cir. 2014) .............................................................................14

*Davies v. N.Y.C. Dep't of Educ.,*
 563 Fed. Appx. 818 (2d Cir. 2014) ................................................................28

*Davis-Garrett v. Urb. Outfitters, Inc.,*
 921 F.3d 30 (2nd Cir. 2019) ...........................................................................17

*Duplan v. City of New York,*
 888 F.3d 612 (2d Cir. 2018)......................................................................15, 17

*Farooq v. City of New York,*
 2022 U.S. App. LEXIS 6739 (2nd Cir. 2022) ................................................21

*Gordon v. N.Y.C. Bd. of Educ.,*
 232 F.3d 111 (2d Cir. 2000)...........................................................................18

*Gorzynski v. Jetblue Airways Corp,*
 596 F.3d 93 (2d Cir. 2010)..............................................................................15

*Gregory v. Daly,*
 243 F.3d 687 (2d Cir. 2001), as amended (Apr. 20, 2001)..............................15

*Hicks v. Baines,*
 593 F.3d 159 (2d Cir. 2010)......................................................................22, 28

*Kessler v. Westchester Cnty. Dep't of Social Servs.,*
 461 F.3d 199 (2d Cir. 2006)...........................................................................14

*Kwan V. Andalax Grp. LLC*
 737 F.3d 846 (2d Cir. 2013)...........................................................................28

*MacEntee v. IBM,*
 471 F. App'x 49 (2d Cir. 2012) ......................................................................25

*Moy v. Perez,*
 712 Fed. Appx., 38, 2017 U.S. App. LEXIS 19820, *4-5 (2nd Cir. 2017)......25

*Reiss v. Hernandez,*
 852 F. App'x 620 (2d Cir. 2021) ....................................................................14

*Shultz v. Congregation Shearith Israel,*
  867 F.3d 298 (2d Cir. 2017)................................................................14

*Summa v. Hofstra Univ.,*
  708 F.3d 115 (2d Cir. 2013)...............................................................19

*Tepperwien v. Entergy Nuclear Operations, Inc.,*
  663 F.3d 556, 2011 U.S. App. LEXIS 22028, *37, 113 ....................26

*Texas Dep't of Cmty. Affs. v. Burdine,*
  450 U.S. 248 (1981) ...........................................................................30

*Thornley v. Penton Publ'g Inc.,*
  104 F.3d 26 (2d Cir. 1997).................................................................29

*Tillery v. N.Y. State Office of Alcoholism & Substance Abuse Servs.,*
  739 Fed. Appx 23 (2nd Cir. 2018) .....................................................19

*USPS Bd. of Govs. v. Aikens,*
  460 U.S. 711 (1983) ...........................................................................29

*Ya-Chen Chen v. City Univ. of New York,*
  805 F.3d 59 (2d Cir. 2015).................................................................27

## Rules, Laws and Statutes:

Fed. R. Civ. P. 56(a) ..............................................................................13

Section 704(a) ........................................................................................17

Title VII and § 1981 ............................................................................3, 14

## PRELIMINARY STATEMENT

Defendant-appellees MTA New York City Transit Authority, Marva Brown and David Chan ("Appellees") submit this brief in opposition to Plaintiff-Appellant Jennifer Berkeley-Carr's ("Appellant") appeal of District Court Judge Vernon Broderick's order granting summary judgment to Appellees on the ground no reasonable trier of fact could find in favor of Appellant on her claims that: (1) Appellees violated anti-discrimination law in failing to promote Appellant to specific positions within the Transit Authority; and (2) Appellant suffered retaliatory discrimination within the meaning of the relevant anti-discrimination law (A127-130).[1]   The district court's decision was correct and should be affirmed.

In the lower court, Appellant asserted claims of age, race and gender discrimination against her managers, Defendant-Appellees Brown and Chan. Her claims included a failure to promote and a retaliatory hostile work environment claim.  With respect to her failure to promote claim, Appellant did not dispute that the two individuals selected for two positions were highly qualified and had extensive relevant experience.  Instead, Appellant argued that she was qualified for the position and had relevant experience. Appellant also claimed that annual performance reviews that noted, *inter*

---

[1] "A" refers to the separately bound record appendix filed by Appellant.

*alia*, a need for improvement, as well as purported onerous work assignments and lack of support, together constituted a retaliatory hostile environment based on her protected activity. The purported adverse performance reviews, however, were issued in 2017 and 2018, over two years after her protected activity.

The district court correctly concluded that Appellant failed to proffer any evidence from which a reasonable juror could find that the reasons Appellees provided for selecting two undisputedly qualified candidates and longer-standing Transit Authority employees for two positions were pretext for discrimination. Further, viewing the record as a whole in a light most favorable to Appellant, the district court determined that there was insufficient evidence from which a reasonable juror could conclude that purported retaliation was the "but-for" cause of any job action taken with respect to Appellant or that Appellant suffered from a retaliatory hostile work environment.

Although the record is lengthy, the facts are uncomplicated and undisputed, and the facts adduced by Appellant fail to establish any material issues of fact. It is respectfully submitted, therefore, that the judgment of the lower court be affirmed.

2

## QUESTIONS PRESENTED

1.      Whether the district court correctly determined that Plaintiff-Appellant failed to adduce evidence sufficient to convince a jury that she has been subject to discrimination and retaliation in violation of Title VII, ADEA and Section 1981.

2.      Whether the district court correctly determined that Plaintiff-Appellant's complaints about less positive performance reviews and onerous assignments unrelated to her protected activity did not amount to an actionable hostile work environment claim.

3.      Whether the district court correctly determined that Plaintiff-Appellant failed to demonstrate that any adverse employment action she suffered was causally related to her protected activity and otherwise failed to rebut or proffer evidence that the legitimate, non-discriminatory business reasons for such adverse employment were pretext for retaliation.

4.      Whether the district court correctly determined that Plaintiff-Appellant failed to raise an inference of discrimination or proffer evidence that the legitimate, non-discriminatory business reasons provided by Appellant's long-standing manager for selecting two undisputedly qualified and longer-standing employees for two more senior positions in her group were pretext for discrimination or retaliation.

# I.
## STATEMENT OF FACTS

Appellant is an African-American female of Caribbean descent born in 1955 (63 at the time the lawsuit was filed) who, for all relevant purposes, held the title of Director, Telecommunications & Systems in the TA's Division of Capital Programs, Department of Subways ("Capital Programs") until her retirement effective June 2022.  In this action, Appellant alleges that her long-time manager Marva Brown ("Brown"), Vice President & Chief Officer of Capital Programs (retired effective October 2021), who is also an African-American female of Caribbean descent (born in 1959), discriminated against her on the basis of her age, race and gender by not selecting her for two more senior positions for which Appellant applied in 2013 and 2014 (A-38).

Two years prior to the hiring decisions at issue, Brown promoted Appellant into her current position by creating for her the new title of Director, Telecommunications & Systems and giving her a 12% raise (A183; A705-A710).  Not-withstanding, Appellant challenges Brown's subsequent decisions to appoint two slightly younger but longer-standing TA employees Joseph DiLorenzo (aged 54 at the time) and Defendant David Chan (aged 55 at the time) to two "Senior Director" positions.

### i.    The Position of Program Management & Oversight ("PMO")

The first hiring decision Appellant complains about was for the position of Senior Director, Program Management & Oversight ("PMO"), which she applied for in October 2013.  The selected candidate would be reporting directly to Brown and would be in charge of managing and coordinating the capital program for tunnel lighting, line structures and line equipment (A-711).  An interview panel was created for this position, which included a representative from Human Resources and three Senior Directors in Capital Programs, including Amy Kaufman, Appellant's direct supervisor at the time (A1010-A1016.)

Following interviews, the members of the panel recommended four internal candidates to Brown: Joseph DiLorenzo, Franz Polycarpe, Appellant and David Chan.  Following second interviews, Brown selected Joseph DiLorenzo for the job.   DiLorenzo had been with the TA since 1989, had many years of relevant experience in stations and infrastructure (A721-725) and Brown had supervised him directly in Capital Programs when she was a Senior Director (A265-266I).  Brown explained that among other things, DiLorenzo's experience and his technical background in architecture, which was important to her in filling this position, made him the best candidate for this position (A722, A277-78).  Appellant does not allege that she was

"more qualified" than Mr. Lorenzo nor did she know Mr. Lorenzo's qualifications, experience or work product. *See* A190-191.

### ii. Following Dilorenzo's appointment, Appellant faces challenges with her then supervisor Amy Kaufman

Appellant was supervised by Amy Kaufman from June 2012 until May 2014 (A143, A-1010-1016). In or around March of 2014, Appellant says she "clashed" with Amy Kaufman (A-185 at p. 61-62) regarding whether Appellant would be allowed to take time off from work in light of a division wide policy requiring one person to be there for coverage purposes. Kaufman submitted a declaration in which she states that she found Appellant increasingly "challenging" over the course of 2014, citing, among other things, that Appellant "would not keep me informed", "refused to put her work and documents on a shared drive", had a "resentful" attitude and was "openly hostile to Marva" (A-1013-1014).

In April 2014, Brown had Appellant "vacate [the] office" she had occupied for "two years" to turn it over to DiLorenzo, and Appellant relocated into a manager's Bay, to which all managers in her hay grade level C are entitled (A1070). Appellant concedes that managers at her level (level C) are not entitled to an office and that DiLorenzo got it because of his higher seniority (Level B). A-192-193, but alleges she was "humiliated".

### iii.    Appellant Applied for the Position of Program Management & Analysis ("PMA")

Kaufman left the TA in May of 2014, which left an opening in her former role, and a position was posted for Senior Director, Program Management & Analysis (A-768). The selected candidate would be reporting to Brown and would be responsible for, among many things, overseeing all analysis for the Communications & Systems, and Elevators & Escalators program areas.   Appellant applied for the PMA position, was deemed qualified, and interviewed for it on or around July 30, 2014. (A-43 ¶25) The interview panel consisted of three TA employees: Brown, Jennifer Franceschini (HR) and Deborah Chin ("Chin") a Manager in Capital Program Management with whom Plaintiff had worked with closely. *See* A-606, *et al*.; *see* A-1018-1024 (Chin Dec.).

Chin thought Chan interviewed notably well, while she observed that Appellant "display[ed] a sense of entitlement to the" PMA position in her interview, and "was openly hostile towards [Brown]." (A-1021.) Chin also described Appellant as someone who, among other things, "pitted the operating and maintenance departments against each other rather than facilitating them to work together" (*id*. at ¶24).

Brown offered the PMA position to Chan (A-775) based on his educational background, experience, resume and interview (A267-268).

Chan had been at TA since 1987 (A-779-780)—approximately thirteen years longer than Plaintiff—and had a background in electrical engineering and business administration. Brown explained that there "are lots of technical aspects in the area" and having someone who "has an electrical background, who would be able to understand drawings, who would be able to understand, you know, specifications of an electrical program area" was "important" to her. *See* A266-268.

Appellant does not allege in this action that she was "more qualified" than Chan, rather, she testified that she did not know what his qualifications or experience was, only that she (and not him) had managed Telecommunications area successfully. *See, e.g.,* A-199-200.

On or about August 20, 2014, according to Appellant Brown told her she would not be promoted to the PMA position "because [Brown] want[ed] to take Communications in another direction." (A16). In response, Appellant spoke to Brown's boss and testified she said to him (A20; A283):

> I am looking for a reassignment outside the Division of Capital Programs under Marva Brown because I have been managing the Communications area with six different managers and I carried the responsibilities, and the position came up, and I applied, and I was not hired. And I needed to be placed somewhere where I can advance in the organization.

When asked if she complained about discrimination to VP Leader at that time she said no (A-201 at 126 ¶19-21 ("No, I did not discuss

discrimination with Joe Leader."; *see also*, A-202 at pp. 130-131)[2]. Following this meeting, Brown and Plaintiff had a conversation in which Brown told Plaintiff that "going to [Brown's] boss is not going to change [Brown's] mind." A283-284. At around this same date, on or about August 20, 2022, Brown helped Appellant to apply to the New York City Leadership Institute, a program which helps prepare city mid-level agency officials for higher positions by providing Appellant a letter of recommendation (A809). Brown told her "they should work on a development plan" for her which Appellant refused (A617-618; A-375-6).

###### iv. Appellant complains to the TA's Dept of EEO & Diversity ("EEO") about the promotional decisions

On September 2, 2014, Appellant began the process of filing a complaint against Brown with EEO for not promoting her to either the PMO or PMA positions, in which Appellant alleged "age discrimination, unfair promotions [sic] and hiring practices, and abuse of power." (A589).

Appellant also emailed EEO that she viewed Brown's actions, such as announcing that a new Senior Director would be starting, and allowing Chan to start "part-time", as "retaliation for filing [her] EEO complaint and for requesting a lateral transfer from Joe Leader" (A812-818). In an

---

[2] Appellant alleges now that she "filed complaints of discrimination" with "Joe Leader" at this August 21, 2014 meeting (App. Brief p. 23, 40, 43).

October 15th follow-up email, Appellant added that she was "working in an environment that [she] believe[d] could only get worst [sic] and "I feel isolated and I am not sure how long I can continue to work in this environment" (A816). Appellant says she was "frustrated" and "angry" over Chan's appointment (A245), and that she said to Chan "Don't worry I won't be here when you get here" (203 at p. 135-6).

In mid-February of 2015, Appellant communicated to EEO that she thought "Chan has 'harassed' and 'retaliated against [her], in that he . . . 'talks down' to [her] and has communicated . . . both verbally and via email in a disrespectful manner…" (A819-820). Appellant specifically complained that Chan's e-mails were disrespectful and said things like "come see me" instead of "can you come see me?" (A819, A836). EEO responded by telling Appellant she had not provided sufficient information to establish a potential violation of the TA's EEO policies regarding Chan. (*Id.*) On April 24, 2015, EEO issued a formal memorandum detailing that it had not found "reasonable cause" to believe that Brown had discriminated against Appellant in violation of TA policies (A-606-621).

**v.    Appellant's "Good" Performance Reviews for 2014 and 2015**

On May 20, 2015, Plaintiff received her annual performance review for 2014, which gave her an overall evaluation of "Good" (A837). Chan

drafted Plaintiff's 2014 review with input from Amy Kaufman, (A1014-1016), and he had Brown review a draft of the evaluation once he had finished it, wherein she made a few suggestions, including changing two marginals to goods (A842-843). Plaintiff's 2014 performance review says that [Plaintiff] is not functioning at the level of her current position" and that Chan would "continue to work with [Plaintiff] to further develop her management skills." (A837). Plaintiff began a process to appeal Chan's 2014 performance review of her (A856), but withdrew this appeal on June 8, 2015. Appellant also contacted EEO and alleged this review was in "retaliation for filing a discrimination complaint against Marva Brown…in September 2014" (*see* A850-855).

Appellant's performance review for 2015, the final draft of which is dated April 1, 2016, also ranks her overall performance as "Good." (A-905-910). The review states that Jennifer's "involvement and productivity is not at the expected level" and she "has to pay closer attention to deadlines as she missed deadlines for several assignments" (A909). Further, he wrote that she was "required to attend a course on respectful workplace" and "Jennifer has the ability to perform at a higher level if she chooses". *Id.* (*see* various email and memoranda exchanges concerning work-related assignments and

11

issues, A912-A917; A922-925; A937-939).  Appellant's salary increased by
$4,232 (from $104,733 to $108,965) as a result of being eligible for General
Wage Increases based on her satisfactory reviews.

### vi. Plaintiff's 2016 and 2017 "Needs Improvement" Performance Reviews

For the 2016 year, through a performance review "discuss[ed]" on
April 11, 2017, Plaintiff was given an overall rating of "Needs
Improvement," (A946-953), citing her as "not at the expected level of a
Director" and issues with "completeness and timeliness" of assigned work.
In mid-2016, May 10th, Brown had contacted EEO over the "progressively
worse[ning]" work relationship between Plaintiff and Chan, Appellant's
failure to perform her job at the expected level, and about her own
perceptions of Appellant's "hostil[ity]." (A-941).  That same day, Brown
had a meeting with Appellant, gave her the respectful workplace policy,
and told her that she spoke to Labor Relations and EEO and informed her
of her right to do so.  A942.

Chan's issues were memorialized on or about May 31, 2016, in
which he wrote a memorandum to Brown concerning Plaintiff's "poor
work performance and offensive defaming accusations."  A-944-945.
This memorandum discussed, among other things, a "Priority" level

assignment Appellant was given of "assembling a matrix of critical projects for Livingston Plaza, RCC and PCC", which Appellant did not complete before she left that day, and which Chan had to complete. *Id.*

For her 2017 performance review, which was administered on or about January 17, 2018, Plaintiff once more received a rating of "Needs Improvement" (A968-974). Chan referenced Appellant's workplace issues in a remedial letter to her dated February 27, 2017, in which he said, among other things, Plaintiff "fail[ed] to properly and timely complete assignments" and made "inappropriate comments." (A974-975, A984).

As a result of the 2016 and 2017 "Needs Improvement" performance reviews, Plaintiff did not qualify for wage increases in 2017 and 2018.

## II.
## ARGUMENT
### A. THE DISTRICT COURT CORRECTLY GRANTED DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

#### Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial. Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir.

2002) (internal quotations ommitted).  In this case, the parties' submissions

show there is no genuine issue as to any material fact.

## B.   THE LOWER COURT APPLIED THE CORRECT STANDARD OF LAW TO APPELLANT'S RETALIATION CLAIMS

Appellant argues erroneously that the lower court applied the

incorrect standard to her retaliation claims.     *See* App. Br. P. 23-43.

However, the lower court clearly stated and applied the law of this Circuit

(*Carr v. NYCT*, 16-CV-9957 (VSB), 2022 U.S. Dist. LEXIS 48731*23-24

(S.D.N.Y. March 18, 2022):

> [U]nder the ADEA, Title VII, and § 1981 which are governed by "the
> *McDonnell-Douglas* burden-shifting framework." *Reiss v. Hernandez*,
> 852 F. App'x 620, 622 (2d Cir. 2021) (ADEA) (citing *Kessler v.
> Westchester Cnty. Dep't of Social Servs.*, 461 F.3d 199, 204 (2d Cir.
> 2006)); *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 220
> (E.D.N.Y. 2014) (Title VII and § 1981). "In order to show a *prima
> facie* case of retaliation in response to a motion for summary
> judgment, a plaintiff must submit sufficient admissible evidence to
> allow a trier of fact to find: (i) conduct by the plaintiff that is
> protected activity . . . ; (ii) of which the employer was aware; (iii)
> followed by an adverse employment action of a nature that would
> deter a reasonable employee from making or supporting a
> discrimination claim; (iv) that was causally connected to the protected
> activity." *Cox v. Onondaga County Sheriff's Dep't*, 760 F.3d 139, 145
> (2d Cir. 2014); *accord Shultz v. Congregation Shearith Israel*, 867
> F.3d 298, 309 (2d Cir. 2017).

In trying to demonstrate her prima facie case of retaliation, rather than

rely on any one "discrete" employment action, Appellant argues that her

progressively lower reviews over the course of three+ years, along with

alleged excessive work scrutiny, "onerous" assignments, and lack of support

staff, amounted to a "retaliatory work environment that **is itself an adverse**

**employment action that would dissuade a reasonable employee from**

**filing or supporting a charge of discrimination**" (App. Br. at 41, emphasis

added). While Appellant often conflates the two types of claims, e.g., the

type of conduct that contributes to a hostile work environment, and discrete

employment actions that could be considered adverse[3], **she must**

**nonetheless satisfy the same standard that governs hostile workplace**

**claims**. *See Duplan v. City of New York*, 888 F.3d 612, 621, 627 (2d Cir.

2018):

> In order to establish a hostile work environment claim under Title VII,
> a plaintiff must produce enough evidence to show that the workplace
> is permeated with discriminatory intimidation, ridicule, and insult that
> is sufficiently severe or pervasive to alter the conditions of the
> victim's employment and create an abusive working environment.
> *Gorzynski v. Jetblue Airways Corp* 596 F.3d 93, 102 (2d Cir.
> 2010)(internal quotation marks omitted).

"A plaintiff must show not only that [s]he subjectively perceived the

environment to be abusive, but also that the environment was objectively

hostile and abusive." *Id*. at 627; s*ee also Gregory v. Daly,* 243 F.3d 687,

701 (2d Cir. 2001), *as amended* (Apr. 20, 2001).  The lower court stated this

---

[3] *See generally Duplan* 888 F.3d at 621(this court separately addressed plaintiff's Title
VII claim based on "discrete instances of retaliation he suffered" and claim "that he was
subjected to a generally hostile work environment in retaliation" for making complaints).

correct standard, *Carr*, *Supra* at \*23-25, and concluded that "[p]laintiff does not make any argument about how the 2014 performance review—or indeed how anything in the record—could allow a reasonable juror to infer the existence of "severe or pervasive" "discrimination."" *Carr*, supra, \*39-39 . This conclusion was correct.

> **i.    The district court correctly determined that Appellant's complaints about less positive performance reviews, unwanted assignments and work-related scrutiny unrelated to her protected activity failed to amount to an actionable retaliatory hostile work environment**

The progressively lower reviews and various work-related emails and/or memoranda Appellant provides in support of her hostile work environment claims do not evince the type of discriminatory (or retaliatory) intimidation, ridicule, insult, or hostility sufficient to establish this claim, rather, they show Appellant's frustration over Chan's management style, tone and work-related criticisms. *See, e.g.,* A816-A817, A819, A834.

An employee's decision to report discriminatory behavior, however, cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience. *See Burlington Northern & Santa Fe Ry v. White*, 548, U.S. 53, 68 (2006)(noting that "courts have held that personality conflicts at work that generate antipathy" and "'snubbing' by supervisors and co-workers" are not

actionable under § 704(a); *Duplan v. City of New York*, 888 F.3d 612, 621, 627 (2d Cir. 2018)(district court correctly dismissed Plaintiff's hostile work environment claims at the pleading stage when her claims were work-related issues, e.g., diminished responsibilities, failure to get promotions and raises).

This case is factually distinguishable from *Davis-Garrett v. Urb. Outfitters, Inc.* 921 F.3d 30,44 (2nd Cir. 2019), referenced by Appellant, where the Plaintiff alleged she was subject to pervasive age-based comments and abuse by supervisors on nearly a daily basis. Comments were alleged to include "You're too old," "You don't have the energy" and would not have "the stamina", among others. The Court held that viewing the record as a whole, "the jury could find that Garett—castigated, denied the training given to younger employees, and excluded from management meetings—was subjected to age-related discrimination, criticism, and ostracism nearly every day." *Id*.

In this case, Appellant does not allege any retaliatory based conduct or abuse, rather, she alleges she was given undesirable assignments and needless feedback from a manager whose "tone" she disliked. Such allegations, which lack any nexus to her protected activity, do not and cannot amount to an actionable hostile work environment claim.

**ii. After careful consideration of the record as a whole, the district court correctly determined that Appellant failed to satisfy the fourth element of her prima facie case of retaliation by demonstrating a causal connection between her protected activity and any demonstrated adverse employment action**

The lower court correctly described the proper inquiries for the third and fourth elements of a prima facie case of retaliation. *Carr*, *supra* at *24). With respect to the third element, the proper inquiry is "whether the alleged adverse action to which the plaintiff was subjected could well have dissuaded a reasonable employee in his position from complaining of unlawful discrimination." *Id.* With respect to the fourth prong, a causal connection can be established: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant" *Id. at 33, citing Gordon v. N.Y.C. Bd. of Educ*., 232 F.3d 111, 117 (2d Cir. 2000).

Appellant advanced a number of implausible theories in support of her retaliation claims, including that Chan knew about a submission she made on May 11, 2015 to the EEOC challenging Brown's promotional decisions and issued her 2014 MPR on May 20th as retaliation (A2364-2365). She alleged at other times that the retaliation began immediately after she filed the

18

September 2014 complaint to EEO and now on appeal that it started after she requested a transfer to Joe Leader in August 2019 (App. Brief p. 23, 40, 43; A-201 par 19-21). In evaluating Appellant's retaliation claims, however, the lower court conducted an "independent examination of the record" viewed in a light "most favorable to plaintiff", *Carr* *29, in order to fairly assess her claims. The court correctly determined that it could not find "any reasonable temporal proximity between Plaintiff's protected activity and an adverse employment action":

> The best case that can be drawn is from June 4, 2015 when Plaintiff informed Chan of the status of an EEO complaint she had made, and the 2016 performance review she received in April of 2017, **which is the first adverse action she suffered thereunder** – the record shows this review caused Plaintiff not to receive a wage increase in 2017 (fn excluded). These events are around a year and ten months apart from each other – any "temporal relationship" between them is "too attenuated to establish a causal relationship." *citing Summa*, 708, F.3d at 115 (internal quotations omitted).

**a. Appellant's overall good reviews for the years 2014 and 2015 were not adverse employment actions and all of her reviews otherwise lacked causal relation to her protected activity**

Appellant's 2014 review (and 2015 review), which were overall "Goods" would not have deterred a "reasonable" employee from complaining about discrimination." *See Tillery v. N.Y. State Office of Alcoholism & Substance Abuse Servs*., 739 Fed. Appx 23, 24 (2nd Cir. 2018)(lukewarm criticism at the end of an otherwise positive review would

19

not "deter a reasonable employee from complaining"); *Byrne v. Telesector Res. Grp., Inc.*, 339 F. App'x 13, 17 (2d Cir. 2009) (satisfactory evaluation was not adverse employment action even though evaluation was lower than in previous years). The district court correctly determined that Appellant could otherwise not demonstrate a causal connection between her protected activity and the 2014 review she received on May 20th, and rejected her theory that Chan knew about a May 11, 2014 submission to the EEOC since it lacked any evidentiary support (Carr at *28-31).[4] Her theory of retaliation was further belied by the undisputed facts that: 1) the 2014 review was drafted by Chan (not Brown) based on the input of Amy Kaufman, who was responsible for supervising Plaintiff for most of 2014 and had issues with Plaintiff that pre-dated her protected activity; and 2) in reviewing Chan's draft, Brown suggested that one or two "Marginal" ratings be changed to "Good", and suggested comments clearly meant to further develop Appellant as a manager (A846).

Appellant admitted at her deposition that she has no "proof" to support her claim of retaliation against Chan (A213), but "surmise[d]" that Brown told Chan about the September 2014 complaint against her and

---

[4] Although Appellant apparently submitted a letter complaint to the EEOC on May 11, 2015 (amended on May 27, 2015), those documents were not sent to Respondents (A-641-656); rather, Respondents received an EEOC Charge and Complaint by Appellant dated October 15, 2015 (A-625-A640). Appellant's argument (A2362, A2364-65) that her May 11th complaint marked the start of her hostile work environment was specious.

encouraged him to "retaliate" against her by giving her "Marginal" ratings (on an otherwise "good" review) 8 months later (A210, A-226 at p. 226). In addition to not being "adverse", the review does not support an inference of causal link. *See Carr*, *supra* at *28-29; *see Farooq v. City of New York*, 2022 U.S. App. LEXIS 6739, *10 (2nd Cir. 2022)(in the absence of additional allegations supporting causation, "mere temporal proximity" must be "very close" to establish a causal connection between the protected activity and an adverse employment action), *citing*, *Clark County School District v. Breeden*, 532 U.S. 268, 273-74 (2001). Appellant's 2015 annual review was administered more than one year after Plaintiff's internal complaint and external complaints, suggesting no temporal proximity whatsoever. *See id.* at 273–74 (a lapse of 20 months "suggests, by itself, no causality at all"). And while the district court concluded that Appellant's receipt of "Needs Improvement" reviews in 2017 and 2018 (for the years 2016 and 2017), were sufficiently adverse and would have dissuaded a "reasonable employee" from complaining about discrimination, there is no dispute that these reviews came long after Plaintiff's protected activity, repudiating any notion of a causal connection.

Appellant makes no claim of disparate treatment by Appellees and conversely records show that Chan rated others worse than her (e.g.,

similarly (A-1003) and that Brown gave similar assignments to others in her group.  Appellant did not know how Chan managed other employees or what Brown assigns others in the Division (A-211 at p. 166; A-216 at p. 188; A-218-219; A-222 at p. 212; A-224 at p. 217), and her other submissions by individuals Chan supervised (notably two significantly younger males), who did not engage in protected activity, also alleged frustration over his management style (A1098 "it was frustrating to work with David" (¶15-16)).

> **b.**   **Appellant's other work-related complaints over the course of three+ years concerning assignments and excessive work scrutiny do not individually or in the aggregate, in context, amount to adverse employment action(s)**

Appellant lodges many complaints against her managers over the course of three+ years, many which pre-dated her protected activity, for example, her complaints about being moved out of an office in April 2014 and denied vacation leave in March 2014.  However, an examination of the records, including her own testimony, reveal that the grievances that post-date her complaints are false and misleading and otherwise trivial in the aggregate.  *See Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010) ("[I]n determining whether conduct amounts to an adverse employment action, the alleged acts of retaliation need to be considered both separately and in the aggregate…")(internal citations omitted).

Appellant often complained about basic, widespread work rules governing issues such as vacation leave (*see* A985-99, showing in any event she took 504 hours of vacation) and seniority that were not unique to her (*see*, *e.g.*, A185 acknowledging Brown's vacation policy in Capital Programs requiring that one Director be present at all times in an area; *see* A1001-2, records showing that everyone, not just her, was asked to designate lunch times for coverage purposes; *see* testimony A222-223 at p. 214-15, acknowledging that at her managerial Grade level, she is not entitled to an office, but rather, a Manager's Bay, where she currently sits (A992-1000) and was removed when someone in a higher Grade Level came in and had priority over her (*see*, *e.g.*, A192 at 90:3-10)).

Further, Appellant continually contradicts herself, on the one hand complaining that she was not offered participation in high level projects and that she was treated like an Analyst rather than a high level Director, and on the other hand, complaining that the more visible projects she was assigned, such as leading a task force to revamp an Operating Budget Impact ("OBI") template for Subways and Buses, and developing a Communications Strategy for Capital Programs, were too time-consuming or technical for her to complete on time or even altogether. Her excuses that she had no "technical" expertise or had "no affiliation with Buses" were specious, and

she was repeatedly told the strategy did not require nor did her managers expect an "engineering assessment" (A-361-365). Appellant claims that deadlines given to her were "unrealistic" (A19), but states she was not given deadlines for the OBI and Training Manual projects and actually took lengthy times to complete them (OBI – 6-8 months)(A215-216; A382-384)(Training Manual- 8-9 months)(A-221; A388-392).

Appellant complained about leading the task of compiling a training manual to be used as guidance for employees coming into Capital Programs because she felt that employees in HR should have been given this (A-150-151). Brown explained it had nothing to do with HR, did not require a short turnaround, and merely involved compiling exiting resources Appellant was familiar with and had access to (A390-391). Regardless, completing the tasks assigned to her by management were part of her job. *See Brown v. Snow*, No. 02 Civ. 7985 (GEL), 2006 U.S. Dist. LEXIS 10251, *17-18 (S.D.N.Y. Mar. 13, 2006) ("subjective dissatisfaction with assignments does not constitute adverse employment action.") *aff'd sub nom. Brown v. Paulson*, 236 F. App'x 654 (2d Cir. 2007) (summary order). Further, it is not in dispute that Brown assigned her staff multiple projects at one time and that everyone in the department performs "Analyst" work and work outside their basic duties (A-377, A-380; A222 at 212:17-23).

Appellant claimed she was "denied support staff", but repeatedly testified that she received assistance from the Analysts in her group (A216 at 185; A221-A222) and that she had a direct report until March 2015 (A222 at 209). Chan was repeatedly interrogated at his deposition about correcting mistakes in the documents Appellant submitted to him and holding Appellant accountable for completing her assignments (*see* A543-551). These are not adverse employment actions. *See MacEntee v. IBM*, 471 F. App'x 49, 50 (2d Cir. 2012) ( "alleged retaliatory actions—close supervision of her time entries and workplace conduct—are not cognizable 'adverse employment actions'"); *See Moy v. Perez*, 712 Fed. Appx., 38, 40-41, 2017 U.S. App. LEXIS 19820, *4-5 (2nd Cir. 2017)(allegations of micromanagement, heightened scrutiny and less positive performance evaluations than prior years did not rise to the level of a materially adverse employment action ).

All of Appellant's complaints are precisely the types of trivial harms, petty slights, or minor annoyances that, as a matter of law, do not and should not qualify as materially adverse. No reasonable jury could conclude that the incidents complained of by Appellant satisfy the retaliation standard of

"dissuad[ing] a reasonable worker from making or supporting a charge of discrimination." *White*, 548 U.S. at 67-69.[5]

> **ii.** **Not-withstanding, the district court correctly determined that even if Appellant had made out a prima facie case of retaliation, she could not rebut or show that the legitimate, non-discriminatory, non-retaliatory reasons for her progressively lower performance reviews and other work-related emails/memoranda were pretext for retaliation**

Notwithstanding the above, the Court correctly concluded that even if Appellant had met her prima facie case of retaliation, Defendants "articulate[d] . . . legitimate, non-discriminatory reason[s] for [the] adverse employment action[s]" that Plaintiff may have suffered." *See Carr* at *40-41. The court found "ample record evidence to support Defendants' stated belief that Plaintiff was not doing her job adequately and was unpleasant and difficult to work with, thus warranting the negative performance reviews. *Id.*, citing in the record as examples, A911-945 (various memoranda exchanged by Chan and Appellant); A962 (Letter of Reinstruction from Chan to Plaintiff "documenting [Plaintiff]'s failure to properly and timely complete assignments and [her] inappropriate conduct"). *See* other examples of work-related issues, A-860, A-875, A-962; A-905; A-911; A-905; A832-833; A977, A979; A399-404.

---

[5] Worth noting is that Appellant herself was never deterred and complained regularly that she was being "harassed" when she was assigned work. *Tepperwien v. Entergy Nuclear Operations, Inc*., 663 F.3d 556, 572, 2011 U.S. App. LEXIS 22028, *37, 113.

Appellant received a "Needs Improvement" on her 2016 annual review (administered in April 2017)(A946), based on her progressive failure (or perceived refusal) to perform the tasks assigned to her, and her continued disrespectful behavior. *See e.g.*, A-976-77 (Appellant continued to raise objections in December 2016 to the Communication Strategy assignment given to her in August 2016); *see* A944-45. By 2017, Appellant's performance and attitude in Capital Programs had evidently deteriorated, culminating in a disrespectful outburst at Chan in front of other employees saying he did not know how to manage (A962-967).

Title VII is not an invitation for courts to sit as "a super-personnel department that reexamines employers' judgments." *Ya-Chen Chen v. City Univ. of New York*, 805 F.3d 59, 73 (2d Cir. 2015) (internal quotation marks omitted). Other legitimate, non-discriminatory business judgments about which Appellant disagrees include, e.g., Chan's decision to "flatten" his organization and have new hires report directly to him or the Brown's decision to remove Appellant as a direct point of contact during Chan's absences after not getting information from her on an urgent matter. Years following her complaint of discrimination, when Brown declined to recommend Appellant for permanent appointment to the "Administrative Staff Analyst" title (which did not impact her salary, benefits,

27

responsibilities or other civil protections), it was the result of these performance issues at that time, in addition to her belief that it would give Appellant "an opportunity to get employment in another area" having said that she was unhappy in the unit (A424-425).

Because Appellees have met their burden of proof, "the presumption of retaliation dissipates," *Hicks*, 593 F.3d at 164 (citation omitted), and Appellant must offer admissible evidence from which a reasonable jury could conclude that the "the adverse action would not have occurred in the absence of the retaliatory motive." *Kwan v. Andalax Grp., LLC*, 737 F.3d at 846 (2d Cir. 2013). Appellant fails to do this (*Carr* at \*41-42):

> Rather than demonstrating pretext, Brown's recommendation to Appellant demonstrates an effort to help Appellant get the experience necessary to advance in the Authority. While Appellant also argues that "the animus Brown has toward Plaintiff for [Plaintiff's] complaining to" Brown's boss "about not being promoted and wanting a transfer out of Capital Programs" evinces animus, this pre-dated her protected activity. The Court held that "even if Brown was upset with Plaintiff over this when it happened on August 20, 2014, Appellant offers no reason to think that Brown harbored "retaliatory animus" for the roughly three years it took for Plaintiff to next suffer an adverse employment action, ""let alone that retaliation was a but-for cause of [any] adverse employment actions." *Abromavage v. Deutsche Bank Sec*. Inc., 1

On this appeal, Appellant also continues to tout her earlier performance reviews in 2008 (Tsang   A1092-1094) and in 2012 –Newbold (A-1083). However, as explained above, how these supervisors perceived

Appellant's performance years earlier is not relevant. *See Davies v. N.Y.C. Dep't of Educ.*, 563 Fed. Appx. 818, 820 (2d Cir. 2014) (the plaintiff "claims that for the past twenty years she has had a sterling performance record," but she "cannot use her past performance to shield her from two years of unsatisfactory performance evaluations"). Drawing such an inference is "even less permissible", as is the case here, when a new supervisor is appointed, who is "entitled to set his own standards and agenda…even if those expectations are contrary to a prior manager's expectations." *Id. See Thornley v. Penton Publ'g Inc.*, 104 F.3d 26, 29 (2d Cir. 1997) ("Whether job performance was satisfactory depends on the employer's criteria for the performance of the job—not the standards that may seem reasonable to the jury or judge"). Chan testified and even stated in his reviews (not inconsistently) that he felt Appellant was capable of performing at a higher level, rather, she chose not to (*see* e.g., A974). Appellant's declarations merely contain self-affirming statements which fail create a genuine material issue of fact for a trial. *See USPS Bd. of Govs. v. Aikens*, 460 U.S. 711, 716 (1983)(noting that, "[i]n a discrimination case," the law is "decidedly not interested in the truth of the allegations against plaintiff" but is instead "interested in what 'motivated the employer"). Appellant should not be entitled to a trial against her managers "based on pure speculation, no matter

how earnestly held." *Ali v. Mount Sinai Hosp.*, No. 92 Civ. 6129 (JGK) NG),

1996 U.S. Dist. LEXIS 8079, at *22-23 (S.D.N.Y. Jun. 12, 1996).

### B.  THE DISTRICT COURT CORRECTLY DISMISSED APPELLANT'S FAILURE TO PROMOTE CLAIMS

Appellant continues to argue, as she did below, that she should have

gotten two more senior positions not because she was "more" qualified than

the other candidates (App Br. P. 59), or that age or any other legally

prohibited factor played a role in the decision-making, but because she was

the "best candidate for the job" and "succeeded in the Director of

Communications title for four years prior to the Senior Director job

postings." *Id.*

The district court correctly declined to second guess Brown's business

judgment and discretion to choose among qualified candidates.   *See Texas

Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 259 (1981) ("[T]he employer

has discretion to choose among equally qualified candidates, provided the

decision is not based upon unlawful criteria.").   This case is factually

distinguishable from the case Appellant references, *Byrnie v. Town of

Cromwell Bd. Of Educ.*, 243 F.3d 93, 98 (2nd Cir. 2001), where this Court

reversed a district court judgment where Plaintiff's paper credentials were

superior in comparison to the chosen candidate's credentials, the chosen

candidate was not technically qualified for the job, and there was weak

plausibility of the explanations for the hiring decision. That is plainly not the case here – there is nothing inconsistent about Brown's decision, made with input from two respective panels, and there is absolutely nothing in the record to support Appellant's claim of discrimination.

## CONCLUSION

For the foregoing reasons, along with all of the reasons provided to the District Court, the judgment of the District Court is correct and should be affirmed.

Dated: October 17, 2022

Respectfully submitted
*/s/ Mariel A. Thompson*
Mariel A. Thompson
Office of the General Counsel
New York City Transit Authority
130 Livingston Street
Brooklyn, NY 11201
(718) 694-3893
Attorney for Defendants-Appellees
MTA New York City Transit
Authority, David Chan and Marva
Brown

31

## CERTIFICATE OF COMPLIANCE

I hereby certify that the Brief to which this certificate is annexed is double-spaced within the meaning of FRAP Rule 32(a)(4), uses a proportionally spaced face, and contains 6,486 words. I have relied upon the word count of the word processing system used to prepare this Brief.

Dated: October 17, 2022

*/s/ Mariel A. Thompson*
Mariel A. Thompson
Office of the General Counsel
New York City Transit Authority
130 Livingston Street
Brooklyn, NY 11201
(718) 694-3893
Attorney for Defendant-Appellees
MTA New York City Transit