# 22-792

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆◆

JENNIFER BERKELEY CARR,

*Plaintiff-Appellant,*

—against—

NEW YORK CITY TRANSIT AUTHORITY, MARVA BROWN, DAVID CHAN,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR PLAINTIFF-APPELLANT

GREGORY G. SMITH
JANET J. LENNON
LAW OFFICE OF GREGORY SMITH
77 Sands Street
Brooklyn, New York 11201
(917) 748-2623
gsmith225@aol.com

*Attorneys for Plaintiff-Appellant*

# **TABLE OF CONTENTS**

PAGE

TABLE OF AUTHORITIES ...................................................... iii

PRELIMINARY STATEMENT ................................................. 1

ARGUMENT ......................................................................... 2

POINT 1—
APPELLEES DO NOT OPPOSE APPELLANT'S
FEDERAL RULE CIVIL PROCEDURE 56.1 COUNTER
STATEMENT OF FACTS THUS, APPELLEES HAVE
CONCEDED THESE ARGUMENTS..................................... 2

POINT 2—
A JURY MAY DETERMINE THAT PLAINTIFF ALLEGED A
RETALIATORY HOSTILE WORK ENVIRONMENT.................. 3

A. Applicable Law.............................................................. 3

B. Prima Facie Case Of Retaliation...................................... 8

PROTECTED ACTIVITY............................................... 9

ADVERSE EMPLOYMENT ACTION .............................. 11

CAUSATION.............................................................. 15

Temporal Proximity ............................................... 15

2017 MPR ............................................................ 22

POINT 3—
WHEN ALL THE EVIDENCE IS REVIEWED BY THE
COURT, IN THE LIGHT MOST FAVORABLE TO
APPELLANT, PRETEXT WAS DEMONSTRATED .................... 23

POINT 4—
CARR WAS THE VICTIM OF INTENTIONAL
DISCRIMINATION IN BEING DENIED TWO PROMOTIONS....... 27

PAGE

1.  David Chan Admits That Appellant Had More Knowledge
    And Experience In The Communications Unit Than He ............. 27

2.  Marva Brown Had Six Direct Reports-All, Except One, Was
    Younger Than Appellant .............................................. 27

CONCLUSION ................................................................. 31

# <u>TABLE OF AUTHORITIES</u>

PAGE(S)

**Cases**

*Burkybile v. Bd. of Educ.*,
411 F.3d 306 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Burlington N. & Santa Fe Ry. Co. v White*,
548 U.S. 53, 126 S. Ct. 2405, 65 L. Ed.2d 345 (2006) . . . . . . . . . . . . 5, 6, 7

*Byrnie v. Town of Cromwell Bd. of Educ.*,
243 F.3d 93 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Davis-Garrett v. Urban Outfitters, Inc.*,
921 F.3d 30 (2d Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Espinal v. Goord*,
558 F.3d 119 (2d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Feingold v. New York*,
366 F.3d 138 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 15

*Grant v. Bethlehem Steel Corp.*,
622 F.2d 43 (2d Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 20

*Graziado v. Culinary Inst. Of Am.*,
817 F.3d 415 (2d Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Griggs v. Duke Power Co.*,
401 U.S. 424, 91 S. Ct. 849, 28 L. Ed. 2d 158 (1971) . . . . . . . . . . . . . . . . . . 12

*Grozynski v. Jet Blue Airways Corp.*,
596 F.3d (2d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 23

*Kaytor v. Electric Boat Corp.*,
609 F.3d 537 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Kessler v. Westchester Cty. Dep't of Soc. Servs.*,
461 F.3d 199 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10, 27

*Laudadio v. Johanns*,
677 F. Supp.2d 590 (E.D.N.Y. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*LeGrand v. Walmart Stores E., LP*,
779 F. App'x 779 (2d Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

PAGE(S)

*Pantane v. Clark*,
   508 F.3d 106 (2d Cir. 2007) ................................................. 18

*Ramseur v. Chase Manhattan Bank*,
   865 F.2d 460 (2d Cir. 1989) ........................................... 29, 30

*Richardson v. N.Y. State Dept. of Cor. Serv.*,
   180 F.3d 426(2d Cir. 1999), *abrogated on other grounds by*
   *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.
   Ct. 2405, 165 L. Ed.2d 345 (2006)........................................ 22

*Smith v. Cry, of Suffolk*,
   776 F.3d 114 (2d Cir. 2015) ................................................ 17

*Summa v. Hofstra Univ.*,
   708 F.3d 115 (2d Cir. 2013) ...................................... 18, 20, 21

*Tonkyro v. Sec'y, Dep't of Veterans Affairs*,
   995 F.3d 828 (11th Cir. 2021).............................................. 4

*Turley v. ISG Lackawanna, Inc.*,
   774 F.3d 140 (2d Cir. 2014) ................................................ 24

## Rules

Fed. R. Civ. P 56.1...................................................... 2, 3, 30

Local Civil Rules 56.1 (a)....................................................... 3

## <u>PRELIMINARY STATEMENT</u>

Defendants' brief incorrectly identifies issues on appeal [1] and does not identify any facts that are not disputed. Defendants' brief does not argue that accepting Plaintiff's statement of undisputed facts, Defendants would prevail. Because they fail to have an argument that they would prevail based upon undisputed facts, they sink to the level of inflaming this Court based upon irrelevant facts. For example, the issue of retaliation Defendants include Carr's salary amount to inflame the Court to concluding that she has a good salary, so she should not complain about discrimination. Defendants do not state Defendant Chan's increased salary nor do they state what DiLorenzo was earning in his new promoted position.

This case was not appropriate for a decision based upon summary judgment. Accordingly, this Court should vacate the grant of summary judgment and remand this case for trial.

---

[1] For example, Question 2 of Appellees brief at P. 3 states whether district court determined that Plaintiff's complaints amounted to an actionable hostile work environment claim. Plaintiff did not assert a hostile work environment claim.

## ARGUMENT

## POINT 1

## APPELLEES DO NOT OPPOSE APPELLANT'S
## FEDERAL RULE CIVIL PROCEDURE 56.1 COUNTER STATEMENT OF
## FACTS THUS, APPELLEES HAVE CONCEDED THESE ARGUMENTS

Appellees fail to oppose two major arguments in Appellant's brief. These glaring omissions are: (1) their failure to oppose Appellant's argument that the Court improperly disregarded Appellant's Fed. R. Civ. P 56.1 counter-statement of facts and (2) the fact that Appellee Brown was on notice that Plaintiff filed an internal complaint of discrimination against her with the TA EEO since September 2014. (Appellant's brief at pp. 24) Accordingly, Appellees should be deemed to have conceded these arguments. Had the district court considered Appellant's facts as cited in her Fed. R. 56.1 Counter-Statement Response the district court would have obtained facts that support Appellant's case.

Appellant avers that the district court wrongly overlooked and set aside Appellant's Rule 56.1 Responses. The Court said: "I disregard the improper assertions…. of Appellant's counsel" and did not use Appellant's Rule 56.1 Counter-Statement of Facts in assessing the appropriateness of summary judgment. See District Court Opinion and Order at A-2384 F.N. 2. The district court committed error, first because it ignored the fact that Appellees did not follow Local Rules of the United States District Courts for the Southern and Eastern

-2-

District of New York, Local Civil Rules 56.1 (a) by not making "separate, short and concise statements in their numbered paragraphs" and (2) by violating Judge Batts' (the presiding Judge at the time of submission) Individual Practices for the same reason. Additionally, many of Appellees statements of fact were statements concerning credibility. See for example, Appellees 56.1 Statement of Material Facts at ¶¶ 22, 53, 55, 68, 99, 152, 200, 203, 207, 208….If Appellant had followed Judge Broderick's proposal in his Order, Appellant would have had to admit virtually all of Appellees' [material] statements of fact and thereby surrender the motion and the case. Moreover, by not considering Appellant's Rule 56.1 Counter-Statement of opposition facts the district court could not properly consider all of the facts that pertained to Appellant's retaliatory hostile work environment.

## POINT 2

### A JURY MAY DETERMINE THAT PLAINTIFF ALLEGED A RETALIATORY HOSTILE WORK ENVIRONMENT

A.    *Applicable Law*

This Court should apply the *White v. Burlington Northern Ry.* standard to the retaliatory harassment claims. Appellant contends that pursuant to this *Burlington Northern* standard, Plaintiff need only show that a reasonable person would be dissuaded from filing a discrimination complaint and not that the retaliatory harassment was severe and pervasive. In *LeGrand v. Walmart Stores East, L.P.*, the Second Circuit issued a Summary Order that included a ruling on

what constitutes an adverse employment action for retaliation. *LeGrand v. Walmart Stores E., LP*, 779 F. App'x 779, 783 (2d Cir. 2019). The Second Circuit ruled that the evidentiary standard for retaliatory adverse employment actions is that the adverse action "is one that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination, addressing a district court ruling on claims of discrimination and retaliation. *LeGrand v. Walmart Stores East, L.P.,* 779 F. App'x 779,783 citing, *Burlington N. & Santa Fe Ry. Co. v White*, 548 U.S. 53, 126 S. Ct. 2405, 65 L. Ed.2d 345 (2006).

The Court approved the sufficiency of the allegations of retaliation where *LeGrand* alleged that the hostile conduct directed against her escalated after her discrimination complaints and that scheduling and transfer requests were denied. *LeGrand v. Walmart Stores E., LP*, 779 F. App'x 779, 783. The Court, did not require *LeGrand* to demonstrate severe or pervasive conduct as it required when it addressed hostile work environment claims. *Id.* at 783. This is consistent with the holdings of the 11th Circuit directly addressing the proof required for "retaliatory hostile work environment claims" see *Tonkyro v. Sec'y Dep't of Veteran's Affairs*. In that case, the Court reversed the district court ruling on the retaliatory hostile work environment because the lower court improperly utilized pre-*Burlington* case law ("more stringent 'severe or pervasive' standard") in its ruling. *Tonkyro v.*

-4-

*Sec'y, Dep't of Veterans Affairs*, 995 F.3d 828, 833 (11th Cir. 2021), citing,

*Burlington Northern and Santa Fe Railway Co. v. White*, Supra.

In their arguments Defendants seek to defend the district court's holding on

retaliatory hostile work environment. They quote *Davis-Garett* for detailed

allegations made in her complaint of hostile work environment and state that the

pervasive comments are the level of abuse that should be required for Carr in

claiming retaliatory hostile work environment. This decision did not state that this

was necessary. The *Davis-Garett* case had two claims, one for hostile work

environment and the second for retaliation. *Davis-Garrett v. Urban Outfitters, Inc.,*

921 F.3d 30, 33 (2d Cir. 2019). The language quoted by Defendants, i.e., "you are

too old," "You don't have the energy" in the *Davis-Garett* decision is not on the

page cited by Defendants as utilized in the Court's ruling on retaliation. They are

in earlier pages and are part of the Court's discussion of the stand-alone hostile

work environment claim. *Davis-Garett v. Urban Outfitters, Inc.,* 921 F.3d at 35.

The discussion of the adverse action that would dissuade a reasonable employee

from complaining of discrimination retaliation focused on the denial of a transfer

for *Davis-Garett* after she filed her complaint. *Davis-Garrett v. Urban Outfitters,

Inc.,* 921 F.3d at 45.

In reviewing those actions the Second Circuit held, "[i]n 2006, however, the

Supreme Court in *White* ruled that Title VII's "antiretaliation provision, unlike the

substantive provision, is not limited to discriminatory actions that affect the terms

and conditions of employment," 548 U.S. at 64. Rather, a plaintiff may recover for

retaliation by "show[ing] that a reasonable employee would have found the

challenged action *materially adverse*, which in this context means *it well might*

*have dissuaded a reasonable worker from making or supporting a charge of*

*discrimination*." *Id.* at 68 (internal quotation marks omitted (emphases ours)). The

Court elaborated:

> "We speak of *material* adversity because we believe it is important to
> separate significant from trivial harms. . . .We refer to reactions of
> a *reasonable* employee because we believe that the provision's
> standard for judging harm must be objective. . . .We phrase the
> standard in general terms because the significance of any given act of
> retaliation will often depend upon the particular circumstances.
> Context matters. . . . A supervisor's refusal to invite an employee to
> lunch is normally trivial, a nonactionable petty slight. But *to retaliate*
> *by excluding an employee from a weekly training lunch that*
> *contributes significantly to the employee's professional advancement*
> *might well deter a reasonable employee from complaining about*
> *discrimination*."

*Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 43 (2d Cir. 2019)

Defendants argue that the "reasonable person is deterred" standard can only

be met for retaliatory hostile work environment claims by a plaintiff demonstrating

an environment permeated with hostile activity. Defendants' Brief at p 15. For this

proposition they rely upon *Duplan.* The Court in *Duplan* did not analyze the facts

pursuant to the *White* decision, but instead cited *Grozynski v. Jet Blue Airways*

*Corp.,* 596 F.3d, 102 (2d Cir. 2010) in addressing the question of whether *Duplan*

was subjected to a hostile work environment in retaliation for his complaints.

   *JetBlue* was a stand-alone hostile work environment case having no claims

of retaliatory hostile work environment analyzed by the Court. Consistent with this

the Court's ruling was limited to: "In order to establish a hostile work environment

claim under Title VII, a plaintiff must produce enough evidence to show that 'the

workplace is permeated with discriminatory intimidation, ridicule, and insult, that

is sufficiently severe or pervasive to alter the conditions of the victim's

employment…..'" *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102. It did not

address retaliatory hostile work claims.

   In an effort to deflect from the incorrect standard used by the district court,

Defendants fall back on an argument attempting to equate Plaintiff's negative

employment experience with that of "personality conflicts" and "'snubbing' by

supervisors and co-workers. Defendants' brief at p.16. This is not the type of

adverse conduct by her supervisors alleged by Plaintiff. It is much more

significant. *The standard for retaliation is that a reasonable person would be*

*dissuaded from complaining.* Emphasis added.

   The Supreme Court in *Burlington Northern and Santa Fe Railway Co. v.*

*White*, 548 U.S. 53 noted that [Defendant]…. "argued that the anti-retaliation

provision should be read in *pari materia* with the anti-discrimination provision….

-7-

'We cannot agree.' … Title VII's primary goal is to promote 'a workplace where individuals are not discriminated against because of their racial, ethnic, religious, or gender-based status,' the Court pointed out that '[t]he anti-retaliation provision seeks to secure that primary objective by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees.' …. The Court reasoned that the means by which an employer can retaliate against an employee are not limited to altering his compensation, terms, conditions, or privileges of employment, and that [a] provision limited to employment-related actions would not deter the many forms that effective retaliation can take. Hence, such a limited construction would fail to fully achieve the anti-retaliation provision's primary purpose, namely, [m]aintaining unfettered access to statutory remedial mechanisms. . . .'" *Kessler v. Westchester Cty. Dep't of Soc. Servs.*, 461 F.3d 199, 208 (2d Cir. 2006) (citations omitted).

B.    *Prima Facie Case Of Retaliation*

In order to establish a prima facie case of retaliation, an employee must show (1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff and (3) a causal connection between the protected activity and the adverse employment action. *Feingold v.*

*New York*, 366 F.3d 138, 156 (2d Cir. 2004)(internal citations and quotation marks

omitted). Carr satisfies all three elements.

*PROTECTED ACTIVITY*

Plaintiff's Protective Activities are as follows:

First, on August 21, 2014 Carr met with Joseph Leader, Senior Vice president of

the Department of Subways and Brown's direct supervisor to request a transfer

from the Division of Capital Programs due to "unfair promotional and hiring

practices." (A-44, AC ¶ 29.) On or about the same day Carr was reprimanded by

Brown when she scolded Carr "I told you not to go to my boss". (A-44, AC ¶ 30);

Pl. Tr. A-202 pp. 129-30.

On September 3, 2014 Carr filed and internal complaint with the TA EEO

alleging unfair hiring and promotional practices. Ex. 15 A-1655 (EEO

Investigation Activity Log) On September 23, 2014 Carr filed an internal charge of

discrimination with the TA EEO for failure to promote alleging discrimination

based on race, age and gender. Carr Decl. ¶ 21 A-1072. A-1662-71. On September

29, 2014 Brown was contacted by TA EEO in connection with Carr's EEO

Complaint of discrimination. A-1655-56. On February 18, 2015 Carr raised

concerns about Chan and Brown's harassing and hostile behavior and

disproportionately large volume of work that Chan assigned to her. A-819.

Carr reported that Chan had hired Analysts, but none of them report to her. See Pl. Tr. A-204 at pages 138-140. On May 11, 2015 Carr filed an external charge of discrimination with the EEOC (A-1674-1689) where she complained about discriminately being denied two promotions and being the subject of repeated harassment, retaliation and intimidation by Brown and Chan after she filed her September 23, 2014 charge of discrimination with TA EEO. Appellant also complained that after filing her internal charge of discrimination her last remaining analyst, Earl Jackson, resigned as a result of the retaliation against her that adversely affected him (A-1086-1091). Since his resignation on March 2, 2015 (A-1698), Appellant was not assigned another analyst to assist her in her duties. A-1685.

Accordingly, Appellant's complaints of discrimination gave Appellees notice and knowledge of her opposition to discrimination perpetrated against her. See *Kessler v. Westchester County Dep't. of Soc. Servs.,* 461 F.3d 199, 201 (2d Cir. 2006). ("Neither this nor any other circuit has ever held that, to satisfy the knowledge requirement, anything more is necessary than general corporate knowledge that the plaintiff has engaged in protected activity.") *Id.* citing *Gordon v. New York City Board of Educ.,* 232 F.3d 111, 116 (2d Cir. 2000). On May 18, 2015 the district office of the EEOC mailed Plaintiff's Notice of Charge of

Discrimination to NYCTA Attn.: Eamon Foley-Executive General Counsel, 130
Livingston Street, 12th Floor, Brooklyn, NY 11201.  A-1673-1686

Thus, it is clear that Appellees are charged with knowledge of Carr's
complaints to the TA-EEO and EEOC.  On September 29, 2014 the TA-EEO
contacted Brown for an interview in connection with Carr's internal complaint of
discrimination. On February 18, 2015 the TA EEO emailed Carr to memorialize
the telephone conversation that was held on February 17, 2015, to confirm Carr's
earlier conversation about Chan's disrespectful, mean-spirited emails that
evidenced Appellant's worsening retaliatory hostile work environment created by
Brown and Chan. A-819. See also, Appellant's brief on appeal at pages 23-24.

*ADVERSE EMPLOYMENT ACTION*

The district court held there were no adverse actions prior to the April, 2017
evaluation by Chan.  This was wrong.  Appellant's evidence shows several
February 2015 emails from Chan to Carr that display disrespect after Appellant's
complaint to the TA EEO. For example Chan wrote:  "Jennifer…I don't know
what the reason is for not including me in your request, but you are hereby being
reinstructed to cc me on all correspondence, including emails, as it relates to 'my
unit.'" (A-820).  Defendant Chan harshly reinstructed Carr when, in fact, he never
instructed her. As another example, there were also emails on February 12, 2015
between Chan and Carr regarding a work assignment with disrespectful tones. See

for example (A-822-24). These emails and actions on the part of the Appellees are not "petty slights or minor annoyances" as Appellees argue in their response brief at p. 16. To the contrary this evidence evinces a retaliatory intent and pattern of harassment that was on-going even through the filing of the instant lawsuit filed December 27, 2016. A-11 Carr was directed by the TA-EEO to send Senior Vice President Leader another letter about being subjected to retaliation in violation of NYCTA's Respectful Workplace Policies. See for e.g., Ex. EE A-818-834.

Appellees also argue at page 10 of their brief in response that the TA EEO did not substantiate Carr's complaints of discrimination regarding Chan. The record demonstrates that TA EEO did not conduct a true investigation into the complaints, but instead summarily concluded that they were not valid complaints of discrimination or retaliation. See A-819. It is clear that a defendant's discriminatory conduct and intent may also be inferred from circumstantial evidence. *Griggs v. Duke Power Co.,* 401 U.S. 424, 432, 91 S. Ct. 849, 28 L. Ed. 2d 158 (1971). Here, the disrespectful emails and disproportionately increased workload is circumstantial evidence of defendants' hostility and retaliatory intent. The retaliatory animus that Carr suffered under increased and intensified from on or about October 2014 (when Chan began part-time as Senior Director) to well past Carr's 2017 management review where she did not get the standard cost of living general increase (A-2079) given to all NYCTA managers in good standing.

Carr testified that in 2015 after she filed her internal TA EEO complaints and her external EEOC complaints of discrimination, Chan and Brown assigned her to several tasks which were unrealistic for her because prior to March 2, 2015 she had up to three analyst reporting to her to assist her in her responsibilities and tasks. (A-1353 Carr Tr. L. 16-22). After March 2, 2015 she had no analyst reporting directly to her nor did she ever get any replacements.

Appellant was overwhelmed with the amount of work with no help. She was given numerous assignments at the same time in addition to her primary communication management assignment. See Pl. Tr. A-214-215 at pp. 179-183. As examples: one was to develop a communications strategy document. (Ex. 21 A-1801-1871) For the time period 2015-2017. Another assignment was to revise the concept of operations for the Help Point System. A-1914-1919. (2015) Another additional assignment was to revamp the Operating Budget Impact ("OBI") Statement for the Department of Subways and the Department of Buses with an instruction manual. (Ex. 19 A-1705-1772). (2015 to 2017). *Id.* Appellant was also given an assignment to revamp the employee training manual. (See Ex. 18 A-1700-1704) (2015) All of these assignments were added without any necessary support staff that reporting to Carr. These additional assignments were not exclusive (See for example Pl. Tr. A-214-215 pp 179-83; Pl. Tr.:A-1392:13-A-1393:8).

Appellant received an unreasonable and increasing workload without analyst

help. Carr testified:

> "Assigning all of those extensive assignments to me in addition to
> managing the communications is unreasonable, and it has not - - those
> have not been assigned to any Director in the unit; especially, I had no
> staff to support me."
> Carr Tr. A-1393

Plaintiff additionally testified that:

> "I was assigned several tasks at the same time in addition to my
> responsibility of managing the communication area. I was - - am
> assigned the task of preparing staff summaries. Those tasks are
> reserved for analyst. I was assigned the task of reviewing the critical
> issues, which involves everyone's program area. They're supposed to
> correct. The - - report is published quarterly. They usually come with
> grammatical errors, incorrect information. And I'm told by David that
> in his - - one of his many emails, 'you must have it 100 percent
> correct before it comes to me.' I am told that if it's not correct, I am to
> go to the directors and get the information, whether - - whatever it
> takes to do, that I should do that."
> Carr Tr. A-1394-1395

> Carr testified that she was the subject of retaliation for filing discrimination
> complaints. For example "David stated to Richard Mai and Laura Kapinsky
> that he fired Andrew because he took instructions from me. Those are some
> of the reasons that I can think of. Carr Tr. A-228 p. 235

For a fuller discussion of the adverse actions taken against Carr see

Appellant's brief at pp. 12, 15-20.

A review of the date range of the emails sent to Carr by Chan and Brown

shows a pattern of hostility, animus and the disproportionately high workload

placed on Appellant by Appellees from at least 2014 through the beginning of

2018 when Carr's 2017 MPR was given. The increased retaliation was enhanced

once Plaintiff filed her discrimination complaint in federal court on December 27,

2016. See Court Docket #1. A-2

      In *Feingold v. New York*, the Second Circuit held that Feingold's allegations,

if true, show that he was subjected to an excessive workload…giving rise to an

inference of discrimination. "Viewing the facts in the light most favorable to

Feingold, a reasonable trier of fact could infer that Feingold was assigned a heavier

docket of cases as a result of discriminatory intent". *Feingold v. New York*, 366

F.3d 138, 152-153 (2d Cir. 2004). Similar to *Feingold,* Appellees in the instant

case assigned Carr a heavier workload as a result of retaliatory animus.

*CAUSATION*

      *Temporal Proximity*

      Appellant demonstrates that she filed her initial internal discrimination

complaints with the TA-EEO on September 3, and September 23, 2014

respectively and that the TA EEO contacted Brown on September 29, 2014 in

connection with Appellant's internal complaints of discrimination. Beginning in

October, 2014, Chan started in his promoted position as Senior Director on a part-

time basis from October 13, 2014 to December 1, 2014. Chan immediately

increased Appellant's workload by adding new Elevator and Escalator assignments

to her duties. This is very close temporal proximity. Neither Chan nor Brown told

Plaintiff that these assets were added to her supervision, as opposed to temporary

additional work. The first time Carr learned of this additional permanent workload

was when it appeared on her 2014 MPR on May 20, 2015 Comment's section. See

A-207-208 at pp. 152-53.

On February 18, 2015 Carr complained to the TA EEO about disrespectful

harassing work emails she was getting from Brown and Chan. See A-819. The

evidence viewed in the light most favorable to Plaintiff shows that Appellees had

begun to ramp up a retaliatory hostile work environment for Carr in October 2014

immediately after Carr's TA- EEO complaint had been filed. This with the

background that on August 21, 2014, right after Carr went to Joe Leader to request

a transfer out of Capital Programs because of "unfair hiring and promotional

practices," Brown harshly scolded Plaintiff "*I told you not to go to my boss.*"

Emphasis added. A-202 at pp. 129-30. The temporal proximity from Carr's

protected activity to the start of the retaliatory harassment, when Chan and Brown

made Plaintiff responsible for the Elevators and Escalators Program area, was less

than one month. Plaintiff was given this additional work by Chan on or about

October 13, 2014. Carr Decl. A-1073 ¶ 28. See also Carr's 2014 MPR A-1600

where Chan admits that he had only supervised Carr for two and half (2.5) months

in 2014. In Carr's internal TA EEO complaint at Issue No. 2 Carr complained

about her increased workload. A-1669.

A plaintiff may establish causation either directly through a showing a retaliatory animus, or indirectly through a showing that the protected activity was followed closely by the adverse action. See *Smith v. Cty, of Suffolk,* 776 F.3d 114, 118 (2d Cir. 2015). In the case at bar, Plaintiff avers that she has met both causation methods direct and indirect. Plaintiff states direct causation because of Brown's hostile words spoken to her right after her protected activity when she went to Joe Leader to request a transfer. Viewing this evidence in the light most favorable to Plaintiff a jury could determine that these hostile words were delivered with the intent to follow up with retaliation against Carr which was done by increasing her workload.

Further, on February 24, 2015 Carr wrote an email to Leader where she expressed to him that she was the subject of harassing retaliatory actions by Brown and Chan. Viewing this evidence in the light most favorable to Plaintiff a jury could determine that Carr was subjected to continuing retaliatory harassment ever since her complaint to Leader on August 21, 2014.

Second, the evidence viewed in the light most favorable to Plaintiff, also shows a short temporal proximity from the time of Carr's protected activity, namely her complaints made to Leader and the TA EEO in August and September of 2014, and also, Carr's complaints to TA EEO and the EEOC about Brown and Chan on February 17, 2015 and May 11, 2015 respectively. Plaintiff provided

examples of disrespectful hostile emails by Chan and Brown TA EEO. See, e.g.,

A-818-834. The Second Circuit has not limited itself to a specific gap between

protected activity and adverse employment action that defeats an inference of

causation. *Burkybile v. Bd. of Educ.*, 411 F.3d 306, 314 (2d Cir. 2005). For

example, a delay of eight (8) months supported a showing of causation, see *Grant*

*v. Bethlehem Steel Corp.*, 622 F.2d 43, 45-46 (2d Cir. 1980); *Summa v. Hofstra*

*Univ.*, 708 F.3d 115, 128 (2d Cir. 2013); (four-month gap between plaintiff's

activity and adverse action was sufficient to establish causation, where adverse act

occurred at employer's first opportunity to retaliate); *Graziado v. Culinary Inst. Of*

*Am.,* 817 F.3d 415, 431 (2d Cir. 2016)(summary judgment against FMLA

retaliation claim reversed where just more than three months lapsed between initial

protected leave and termination).

Chan had knowledge that Carr had reported him to the TA EEO because

Carr complained about Chan's conduct to a TA EEO employee whose job it was to

investigate such complaints. See *Pantane v. Clark*, 508 F.3d 106, 115 (2d Cir.

2007). Viewing the evidence in the light most favorable to Appellant, she was

already subjected to a retaliatory hostile work environment filled with hostility and

retaliatory animus as evidenced by Appellees emails to Carr. See for example, A-

1727-1730 ([can we start before 12/2015?] December 2015 time frame threats to

take away Carr's vacation and reinstruction to Carr on expectations of a manager at

her level). A-1745-46 (Examples of Chan pressuring Carr with work deadlines

while knowing that she has no support staff). A-1769-70 (Brown reprimanded Carr

about an OBI project deadline and threatened to take away her scheduled vacation.

They jointly put pressure on Carr for an OBI deadline). A-1856-57. (More

evidence of harassment when Brown made the OBI project Carr's work priority,

but Chan simultaneously pressured Carr about other work assignment deadlines

knowing that Carr had no support staff). See for example email string A-1909-13.

*2014 MPR*

     Carr alleged that her overall 2014 MPR was part of an enhancing retaliatory

hostile work environment. Carr's 2014 MPR marked the first time in four (4) years

(A-1589-1595) that she did not get an excellent rating on her MPR. Appellant's

2014 overall MPR was marred by two (2) marginal designations that decreased

overall ratings on her MPRs from excellent to good. Carr's 2014 MPR was

submitted by Chan on May 20, 2015. Carr's recent protected activity occurred on

May 11, 2015 with her EEOC complaint of discrimination filing. Prior to that

Appellant had made her February 17, 2015 TA EEO complaint. The temporal

proximity between Carr's recent protected activity that occurred on May 11, 2015

when she filed her EEOC complaint to May 20, 2015 when Chan submitted Carr's

2014 MPR is only eleven (11) days demonstrating causation based on very short

time interval between protected activity and adverse action.

Furthermore, Appellant shows sufficient temporal proximity from her

February 2015 and May 2015 discrimination complaints and her May 20, 2015

negative 2014 MPR because Carr's 2014 MPR came within three months of her

February EEO complaint and immediately after her May 11, 2015 EEOC Charge.

*Summa v. Hofstra Univ.*, 708 F.3d at 128 (four-month gap between plaintiff's

activity and adverse action was sufficient to establish causation). Accordingly,

Carr has plausibly shown Appellees retaliatory intent in the lowering of her MPR

ratings given in 2015 and 2016 from excellent to good. A-1597-1601.

*2015 MPR*

Carr alleges also that her overall MPR rating for the calendar year 2015 was

also part of a retaliatory hostile work environment perpetrated by Appellees in

retaliation for Plaintiff's protected activity that occurred on May 11, 2015. In her

2015 MPR defendants increased Carr's designated marginal ratings to three (3).

The temporal proximity between her protected activity that occurred on May 11,

2015 to April 1, 2016 when Chan submitted Carr's 2015 MPR is a just over ten

(10) months. See *Grant,* 622 F.2d at 45-46 (holding eight-month gap between

EEOC complaint and retaliatory action suggested a causal relationship).

Appellant shows that her 2016 needs improvement Management

Performance Review ("MPR") that rated her performance as "needs improvement"

was in retaliation for her federal complaint of discrimination that was filed

December 27, 2016, Dkt. # 1, amended January 4, 2017 Dkt. # 6. The federal

complaint was answered by defendants on March 3, 2017.  It resulted in defendants

giving her a March 17, 2017 needs improvement MPR with a denial of a cost-of-

living increase that all managers received. See A-2-3; A-1635-36. Accordingly,

Carr shows through temporal proximity that the adverse action of receiving a

"needs improvement" MPR with no wage increase was followed closely in time to

her filing and defendants answering her federal complaint of discrimination.

 Appellant's 2016 MPR was signed by Chan on March 17, 2017 A-1636;

Appellees answered the federal complaint against them by Carr on March 3, 2017

only two weeks before Appellees approved Carr's 2017 needs improvement MPR.

Hence, a jury could reasonably find that the short period of time between Carr's

protected activity (Appellees answering Carr's federal complaint) and the

retaliatory action demonstrates Appellees retaliatory animus. See A-1635-36 (2016

MPR) A-2078-80 (NYCTA general wage increase policy guidelines).

The Second Circuit has previously found that commencing the process of

firing an employee approximately seven to eight months after the initiation of an

on-going litigation is sufficient for purposes of establishing temporal proximity.

*Summa,* 708 F.3d at 128. See also, *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir.

2009) (finding that the passage of only six months between the dismissal of

plaintiff's lawsuit and an allegedly retaliatory beating by officers, one of whom…

was a defendant in the prior lawsuit, [wa]s sufficient to support an inference of a causal connection).

*2017 MPR*

Similarly, Appellant shows that her 2017 MPR given on January 19, 2018 that rated her performance as "needs improvement" and again resulting in her denial of a cost-of-living general wage increase that all managers received. These continuing harassing actions were in retaliation for her federal complaint of discrimination that was filed December 27, 2016 (Dkt. # 1 A-2) Brown and Chan's animus toward Carr was again shown after they were deposed in the instant lawsuit. Appellant took the deposition of Brown on November 21, 2017 (A-254) and Chan on November 28, 2017 (A-438) respectively. Chan submitted Carr's 2017 MPR on January 19, 2018 that concluded that Carr "needs improvement" and denied her a cost- of- living general wage increase that all NYCTA managers received. Viewed in the light most favorable to plaintiff there was a time gap that amounted to just over one month between the time that defendants were deposed by plaintiff and the time that plaintiff received her 2017 MPR. (REVIEW THE CASE LAW) *Richardson v. N.Y. State Dept. of Cor. Serv.*, 180 F.3d 426, 446-47(2d Cir. 1999) (holding abusive acts within one month of receipt of deposition notices may be retaliation for initiation of lawsuit approximately one year earlier), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548

U.S. 53, 126 S. Ct. 2405, 165 L. Ed.2d 345 (2006). Based on the totality of the

circumstances and especially the timing and ongoing nature of these allegedly

retaliatory acts, a reasonable jury could infer a causal connection. *Laudadio v.*

*Johanns,* 677 F. Supp.2d 590, 614-15 (E.D.N.Y. 2010).

## POINT 3

### WHEN ALL THE EVIDENCE IS REVIEWED BY THE COURT, IN THE LIGHT MOST FAVORABLE TO APPELLANT, PRETEXT WAS DEMONSTRATED

A plaintiff may provide proof that the defendant's explanation is unworthy

of credence, or a combination of factors is probative of intentional discrimination

in order to be persuasive to a jury that a defendants' negative actions were a pretext

for impermissible discrimination. *Byrnie v. Town of Cromwell Bd. of Educ.*, 243

F.3d 93, 102 (2d Cir. 2001). To the extent there is any ambiguity in Chan and

Brown's intent when giving additional assignments, taking away the support staff

for Plaintiff, isolating her from other employees, denying her the civil service

protected status that she was entitled to, trying to make amends for their

wrongfully discriminatory denial of a promotion, the jury should determine if this

was in response to Plaintiffs complaints about discrimination and retaliation.

*Gorzynski* v. *JetBlue Airways Corp.,* 596 F.3d 93, 101 (2d Cir. 2010) (noting the

jury and not the court should resolve any ambiguities on a motion for summary

judgment). Relatedly, to the extent Chan and Brown's motives and states of mind

are disputed, that issue is for the jury. *Kaytor v. Electric Boat Corp.,* 609 F.3d 537,

548 (2d Cir. 2006).

The evidence permits the inference that Plaintiff was given retaliatory extra

assignments, verbally abused and was subject to abusive correspondence because

of her earlier protected activity. Compare, *Turley v. ISG Lackawanna, Inc.,* 774

F.3d 140, 153 (2d Cir. 2014). Carr adduced evidence that, if credited, could

support the conclusion that the reasons proffered by Defendants [for the retaliatory

actions] are pretextual.  Among other items, Carr gives evidence contrary to

Chan's statement that "the 2014 review was drafted by Chan (not Brown based on

the input of Amy Kaufman…"(Def's memo at p. 20).  The review was given to

Plaintiff on May 20, 2015 A-1600.

In addition to Chan's own contradicting emails requesting information on

Plaintiff"'s performance on June 5, 2015  (Appellant's brief at p. 14), Kaufman's

Declaration states:

> "David called me on June 4, 2015 and told me that Jennifer strongly
> objected to the Managerial Performance Review that he gave her for
> the 2014, so he wanted my input to make sure we were on the same
> page. During our conversation I relayed some of the specific examples
> of the difficulties I experienced in 2014. On June 5, 2015, the day
> after our phone conversation, David e-mailed me a summary of what
> we had discussed the day before, with which I concurred." A.1015 ¶¶
> 46-48

Thus, Chan used Kaufman as his pawn to coverup his lie about Plaintiff's

work performance in 2014 to provide justification for lowering her overall

performance review from Excellent for the year 2013 under Kaufman to Good for the year 2014 in which he reviewed her performance. For further evidence of pretext regarding Brown's participation in Plaintiff's 2014 MPR see Appellant's brief at pp. 13-14.

In addition, there is evidence of assignments to Carr given by Chan and Brown that were false or unnecessary. The Operating Budget Impact ("OBI") - assignment, that Brown required Plaintiff to prepare was not useable because the Division of Capital Planning and Budget (the area responsible) would not approve it for implementation because Brown has no authority over this policy document thus, it was never accepted for implementation. Even though Plaintiff states that she completed the OBI report in 2015 and the document was not accepted for implementation, Brown still said in Carr's 2017 MPR comments that "the assignment to finalize the OBI document remains outstanding." A-1074 Carr Decl. ¶ 32; A-1663.

Lastly, Brown's reasons for not giving Carr the civil service status that Carr earned are contradictory. In their brief NYCTA states: "Years following her complaint of discrimination, when Brown declined to recommend Appellant for permanent appointment to the "Administrative Staff Analyst" title (which did not impact her salary, benefits, responsibilities or other civil protections), it was the result of these performance issues at that time, in addition to her belief that it

would give Appellant "an opportunity to get employment in another area" having said that she was unhappy in the unit". NYCTA Brief pp. 27-28.  In the Notice to Admit Defendants state that it was a March 30, 2017 decision by Brown "not to pick plaintiff up as a permanent employee in her group in the title of Administrative Staff Analyst."  A-1333 ¶ 26

The evidence demonstrates that Defendants attempted to build a paper trail to make a claim that Carr was disrespectful in violation of the NYCTA Respectful Workplace Policy, when in fact it was Brown and Chan who were disrespectful to Carr in violation of the policy. The evidence shows that Defendants increased scrutiny of Plaintiff and built a paper trail to justify their planned disciplinary action as part of their scheme to retaliate against Carr.

Although the allegedly poor work performance of Plaintiff ran throughout the entire 2014 rating period, there were no adverse personnel records, complaints or reports of Plaintiff's alleged inadequate work until after she filed her complaint with Leader in August, 2014 and made charges to TA EEO in September, 2014. Prior to the 2014 MPR Plaintiff's ratings were excellent even by the same rater (Amy Kaufman) who Defendant Chan claims to have consulted with in developing Plaintiff's 2014 rating. The negative personnel records, complaints and reports of problematic work by Plaintiff grew in intensity after her complaints of discrimination.

Thus, the facts pertaining to defendants' proffer of a non-retaliatory reason for Carr's increased assignments and lower evaluations are in dispute, and their resolution is a matter for the jury to resolve. *Kessler v. Westchester Cty. Dep't of Soc. Servs.*, 461 F.3d 199, 211 (2d Cir. 2006). Accordingly, Plaintiff has shown pretext.

## POINT 4

### CARR WAS THE VICTIM OF INTENTIONAL DISCRIMINATION IN BEING DENIED TWO PROMOTIONS

1. David Chan Admits That Appellant Had More Knowledge And Experience In The Communications Unit Than He

Under questioning[2] Chan admitted that he, as (Senior Director of Communications) relied heavily on Appellant to do the work in the Communications Unit. Chan admitted to that as of the present time Appellant had more experience than him. Chan waffled on whether Appellant had more knowledge than him in the Communications Unit, but ultimately admitted that Appellant had more knowledge than him of the Communications Unit over the past two years. [ need cite]

2. Marva Brown Had Six Direct Reports-All, Except One, Was Younger Than Appellant

All of Marva Brown's direct reports were younger than Appellant except, one Titus Beranger 65-68 years old according to Appellant. Plaintiff testified that

---

[2] David Chan testified at his deposition on November 28, 2017.

-27-

in Brown's position as Vice President and Chief Officer she had not promoted any

African-American female as a direct report to her. Appellant testified that she was

presently 62 years of age. Carr Tr. A-1367. Marva Brown testified at her

deposition held November 21, 2017 that everyone who reported directly to her

was promoted by her. Brown named as her direct reports: Titus Byaruhanga

African American in his 60's, Tim Forker White male in his late 50's or early 60's

(Brown was not sure). Annamaria Perdomo[3] Latino female in her 40's, David

Chan Asian male in his 50's, Robert Levine, white male in his late 50's early 60's

but Brown doesn't know. Brown Tr. A-1480:10-1482:17. Brown testified in error

that she had seven (7) direct reports, but records show that she had six (6) direct

reports including recently promoted Joseph DiLorenzo[4] whom she did not

mention in her testimony.

According to produced NYCTA discovery documents[5] Marva Brown was

described as a Black female age 58, A-2287, Titus Byaruhanga Black male age

69, A-2289 David Chan Asian male age 54, A-2292, Robert Levine White male

---

[3] According to NYCTA records Perdomo was promoted to Senior Director after
the lawsuit was filed and [after Marva Brown was noticed for deposition effective
10-17-2017. See A-2327
[4] Joseph DiLorenzo was promoted over Appellant. Appellant states that [?]he was
the recipient of unlawful discrimination.
[5] Plaintiff's Exhibit 49 A-2286-2317

age 59, A-2306, Joseph DiLorenzo[6] age 53, A-2298, Timothy Forker White male age 56, A-2300, Appellant Jennifer Carr [7]age 62, A-2291. According to NYCTA Department of Subways Capital Programs Organization Chart as of February 2015 (see A-2196) Marva Brown had six (6) senior directors that reported directly to her. Only one (1) of the six senior directors was a woman her name was Annamaria Perdomo, promoted after the lawsuit was filed, described as a Hispanic female age 41 (A-2312), four (4) senior directors were all younger White men and one (1) senior director was a Black male age 69.

In the district court opinion at A-2401, FN 14 the court states "[w]hether plaintiff has identified facts that establish an inference of discrimination is a close call in this case. Plaintiff does not cite to evidence that Defendants criticized her performance in ethnically degrading terms; or made invidious comments about others in her protected group; or caused or engaged in a sequence of events…" However, the district court failed to look at the entire record in this case. In assessing the inferences to be drawn from Plaintiff's denial of promotion twice, the court must be alert to the fact that employers are rarely so cooperative as to include a notation in the personnel file that the [non promotion] is for a reason expressly forbidden by the law. *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460,

---

[6] DiLorenzo described his ethnicity as "other" however, Marva Brown described him as White. Brown Tr. A-1447-48

[7] Appellant describes herself as a Black female age 62. The NYCTA produced records do not indicate Appellant's ethnicity or gender.

464 (2d Cir. 1989)(Internal citation and quotation marks omitted). A showing that a proffered justification is pretextual is itself sufficient to support an inference that the employer intentionally discriminated. *Id. at 465.* Further, the plaintiff is not required to prove that the employer's proffered reasons are false but only that they were not the only reasons and that [race] made a difference. *Id.* Here Plaintiff's age, race and gender made a difference in her not receiving either promotion that she sought.

On a motion for summary judgment, the court cannot try issues of fact; it can only determine whether there are issues to be tried. *Id*. In assessing the record to determine whether there is a genuine issue of material fact, the court is required to draw all factual inferences in favor of the party against whom summary judgment is sought. *Id.* In determining whether there is a genuine factual issue, the court should resolve all ambiguities and draw all reasonable inferences against the moving party. *Id.* In the instant case, it appears that the district court erroneously disregarded Appellant's facts and arguments in her Rule 56.1 Response A-1102-1204. The Second Circuit Court of Appeals has repeatedly noted that summary judgment is ordinarily inappropriate where an individual's intent and state of mind are implicated. *Id.* citing *Meiri v. Dacon*, 759 F.2d at 989 (dictum) *Patrick v. LeFevre*, 745 F.2d 153, 159 (2d Cir. 1984) (citing cases).

**CONCLUSION**

Wherefore, Appellant, Jennifer Berkeley Carr respectfully request this

honorable Court to reverse the District Court on the law and remand the case back

for a trial on the claims raised herein.

Dated:      Brooklyn, New York
              November 8, 2022

                        Respectfully submitted,

                        Gregory G. Smith
                        *Attorney for the Plaintiff-Appellant*

                        On the Brief:  Janet J. Lennon, Esq.

# <u>CERTIFICATE OF COMPLIANCE</u>

This reply brief complies with the type-volume limitation of Rule 32(a) of the Federal Rules of Appellate Procedure because it contains 7,029 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(i).

This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

Dated: New York, New York
      November 8, 2022

                      Respectfully submitted,

                      */s/ Gregory Smith*
                      Gregory G. Smith
                      Law Office of Gregory Smith
                      77 Sands Street
                      Brooklyn, New York 11201
                      (917) 748-2623
                      gsmith225@aol.com

                      *Attorney for the Plaintiff-Appellant*